UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| CITY OF BATON ROUGE/EAST BATON ROUGE PARISH, CONSOLIDATED PARISH EMPLOYEES RETIREMENT SYSTEM and POLICE GUARANTY FUND<br><br>Plaintiff,<br><br>VERSUS<br><br>BANK OF AMERICA, N.A., et al.,<br><br>Defendants. | CIVIL ACTION NO. 3:19-cv-00725<br><br>JUDGE SHELLY D. DICK<br><br>MAGISTRATE JUDGE RICHARD L. BOURGEOIS, JR. |

* * * * * * * * * * * * * * * * * * * * * * * *

**STIFEL, NICOLAUS & CO., INC.'S REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**

**PRELIMINARY STATEMENT**

Plaintiffs filed their opposition memorandum to Defendant Stifel, Nicolaus & Co., Inc.'s ("Stifel") motion to dismiss the Second Amended Complaint ("SAC") *ten days* after the May 26, 2020 deadline to respond. After that deadline had passed, they requested a seven-day extension, but then ignored the new deadline they sought as well and filed their opposition *three days* after their requested extended deadline of June 2, 2020. Having twice failed to file a timely opposition, the motion should be granted as unopposed.

In addition to ignoring multiple deadlines, Plaintiffs acknowledge "that there can be no additional amendments to the Complaint" (Opp. at 3)[1] and this Court's ruling that "[w]hether Plaintiffs can state claims for relief will be decided on this Second Amended Complaint" (Order, Dkt. No. 133 at 6), but then proceed flagrantly to disregard it. Plaintiffs almost entirely ignore

---

[1] Memorandum in Support of Plaintiffs' Response to Stifel's Motion to Dismiss the SAC, Dkt. No. 184-1 ("Opp.").

Stifel's arguments as to why the SAC does not remotely allege an adequate basis for a Sherman Act price-fixing claim against Stifel. This comes as little surprise, considering that the purported circumstantial evidence in the SAC was lifted directly from a complaint filed in *In re GSE Bonds Antitrust Litig.*, Case No. 19-cv-1704 (S.D.N.Y.) (the "New York Action"), an action in which Stifel was not a party and which does not mention Stifel even once. The SAC contains no allegations about Stifel's market share, market power, the extent of Stifel's involvement in GSE bond underwriting or secondary market trading, any prices Stifel charged in selling any GSE bonds to anyone, or any communications between Stifel and any defendant in the New York action on any subject. Plaintiffs address none of this but instead seem to suggest—wrongly—that merely asserting that Stifel was a participant in a conspiracy is sufficient. (Opp. at 7.)

Rather than address Stifel's showing that the only specific fact about Stifel alleged in the SAC—a chat between Stifel and a non-party during the syndication period—fails to support Plaintiffs' assertions of concerted action or suffice to plead involvement in a massive antitrust conspiracy, Plaintiffs instead seek to make new allegations found nowhere in the SAC. Even if these new allegations did not flout the Court's Order that Plaintiffs' claims must stand or fall on the SAC, it would not be proper for the Court to consider them: "[T]he law is well-settled that arguments in a brief are not a substitute for properly pleaded allegations: 'it is axiomatic that a complaint cannot be amended by briefs in opposition to a motion to dismiss.'" *Davis* v. *Louisiana State Univ. & A&M Coll.*, 2019 WL 179580, at *5 (M.D. La. Jan. 11, 2019) (citation omitted).

Plaintiffs' state law causes of action fare no better. Plaintiffs assert that these claims are not time-barred because of *American Pipe* tolling based on the filing of the New York Action. But *American Pipe* tolling does not extend to claims against defendants who were not parties to the original class action. *See In re Enron Corp. Sec.,* 465 F. Supp. 2d 687, 730 (S.D. Tex. 2006).

Moreover, Louisiana state law governs the question of tolling and does not recognize tolling of claims based on the filing of federal class actions. *See Quinn* v. *La. Citizens Prop. Ins. Corp.*, 2012-0152, p. 17 (La. 11/2/12), 118 So. 3d 1011, 1022. Plaintiffs ignore both of these points. They also acknowledge in the SAC that they had reason to know of the facts underlying the action as of June 2018—more than a year before it was filed—which disposes of their "fraudulent concealment" tolling argument. (SAC ¶ 169 (p. 90).)

Finally, even if the Court were to reach the question of whether Plaintiffs have adequately pled their negligence or LUTPA claims (it should not), Plaintiffs fail to address directly any of the challenges raised by Stifel. Instead, Plaintiffs seek to bolster their deficient claims with even more allegations that are found nowhere in the SAC. This improper approach should be rejected. After three pleading attempts, the SAC should be dismissed as to Stifel with prejudice.

## ARGUMENT

### I. PLAINTIFFS' RELIANCE ON UNPLEADED ALLEGATIONS TO SUPPORT THEIR SHERMAN ACT CLAIM MUST BE REJECTED.

In order to recover on their Sherman Act claim, Plaintiffs are required to establish "that the defendants conspired to restrain the plaintiff's trade," meaning that "Plaintiffs must show that the defendants engaged in concerted action, defined as having a conscious commitment to a common scheme designed to achieve an unlawful objective" by "direct or circumstantial evidence." *Carpenter* v. *Webre*, 2018 WL 1453201, at *15 (E.D. La. Mar. 23, 2018) (internal quotations and citation omitted). Plaintiffs' opposition does not advance any arguments concerning circumstantial evidence of concerted action involving Stifel. In fact, Plaintiffs argue that there is no need for them to offer evidence of this kind as to Stifel. (*See* Opp. at 7.) Having thus abandoned the argument that the SAC pleads circumstantial evidence of Stifel's involvement

in the alleged conspiracy,[2] Plaintiffs' Sherman Act claim depends on whether Plaintiffs can establish direct evidence of Stifel's involvement. Plaintiffs' Opposition and SAC fail to do so.

Plaintiffs' SAC is fundamentally dependent upon the allegations lifted from the complaint in the New York Action, but Plaintiffs do not identify any allegations in that complaint about Stifel, which was not a party and is nowhere mentioned. Plaintiffs claim that, because factual allegations made in the SAC must be accepted as true, the Court must accept the conclusion that the SAC supports Plaintiffs' claim that Stifel participated in the price-fixing conspiracy alleged in New York. (Opp. at 2-3.) Plaintiffs are wrong. Courts "'do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions.'" *Gentilello* v. *Rege*, 627 F.3d 540, 544 (5th Cir. 2010) (quoting *Plotkin* v. *IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)). Rather, "[t]o avoid dismissal, a plaintiff must plead sufficient facts to state a claim to relief that is plausible on its face"—*i.e.*, "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Gentilello*, 627 F.3d at 544 (internal quotations and citation omitted).

The SAC contains no such facts. It does not contain a single fact about the extent of Stifel's involvement in GSE bond underwriting or secondary market trading, much less any communications between Stifel and any defendant in the New York action on any subject. The sole allegation in the SAC as to Stifel is that it was a party to one chat with non-party Mizuho Securities ("Mizuho"), an entity that is not an alleged conspirator in New York and is not a party

---

[2] *See Robertson* v. *Gautreaux*, 2017 WL 690542, at *6 & n.48 (M.D. La. Feb. 21, 2017), *aff'd in part*, 731 F. App'x 337 (5th Cir. 2018) ("In his Opposition, Plaintiff fails to address Defendants' . . . arguments. As noted by the Defendants in their Reply, failure to address these claims results in abandonment of these claims."); *Martin* v. *Eaton Law Grp. Attorneys, LLC*, 2014 WL 1330285, at *4 n.4 (M.D. La. Mar. 31, 2014) (similar).

here.³ Plaintiffs do not allege they purchased the bond discussed in the chat, and they nowhere explain how that chat, standing alone, could possibly suffice to plead Stifel's knowing involvement in a broad, multi-year conspiracy with other entities, where the SAC identifies no communications between these other entities and Stifel or facts about Stifel's conduct. (*See* Mot. at 11.)⁴

Passing that, Plaintiffs' assertion that "Defendant's argument that this transcript is an example of lawful primary market activity, not unlawful secondary market price fixing, is simply not appropriate at this stage" (Opp. at 3) misses the point. Neither the SAC nor Plaintiffs' Opposition explains how the chat supports any claim against Stifel—they simply assert it. As Stifel explained in its Motion, the chat reflects a discussion between Stifel and Mizuho concerning upsizing a bond offering before the bond was free to trade—*i.e.*, during the initial offering—and the price at which they were willing to purchase additional bonds from the issuer to do so. (Mot. at 12-14.) Plaintiffs do not dispute in their Opposition that this is what is being discussed in the chat, and it is facially implausible that such a discussion, which Plaintiffs have conceded is permissible (*see* SAC ¶ 22 (p. 36)), could support the allegation that Stifel was engaged in concerted action, much less do so when it is the *only* fact alleged against Stifel.

Instead of defending what they have alleged (after three tries), Plaintiffs assert that it "is certainly not the only chat that Stifel is recorded as a participant," though it "is the only transcript cited in the Second Amended Complaint." (Opp. at 3.) Plaintiffs then go on for nearly 2-1/2 pages quoting additional purported chat transcripts involving Stifel that are irrelevant to the

---

³ Plaintiffs repeatedly and incorrectly refer to Mizuho as a defendant in their Opposition. (*See, e.g.,* Opp. at 2 ("[Stifel] had in fact been in chat rooms and had discussed fixing prices with another Defendant in the case, Mizuho Securities.").) Mizuho is not listed as a party on the docket, has not appeared in this action, is not included in the caption of the SAC, and is not listed as a defendant in the "Parties" section of the SAC. (*See* SAC ¶¶ 20-103 (pp. 9-29).)

⁴ Stifel's Memorandum of Law in Support of Motion to Dismiss Plaintiff's Second Amended Complaint, Dkt. No. 151-1 ("Mot.").

Court's disposition of Stifel's Motion.  Putting aside the Court's Order that Plaintiffs would have to live or die on the allegations of the SAC (Order, Dkt. No. 133 at 5-6), "'it is axiomatic that a complaint cannot be amended by briefs in opposition to a motion to dismiss.'"  *Davis*, 2019 WL 179580, at *5 (quoting *Becnel* v. *St. Charles Par. Sheriff's Office*, 2015 WL 5665060, at *1 n.3 (E.D. La. Sept. 24, 2015)); *see also Tilson* v. *DISA, Inc.*, 2019 WL 6878867, at *4 (M.D. La. Dec. 17, 2019) ("A party cannot amend its complaint in a subsequent brief, and an opposition cannot substantively expand or refine a party's claims presented in its original complaint.").  Accordingly, "[t]he Court may not consider the new allegations set forth in [plaintiff's] opposition to the instant motion."  *Stewart* v. *Caton*, 2013 WL 4459981, at *9 (E.D. La. Aug. 16, 2013) (citing *Roebuck* v. *Dothan Sec., Inc.*, 2013 WL 697383, at*4 (5th Cir. 2013)).

Plaintiffs SAC does not come close to pleading a claim against Stifel under the Sherman Act and should be dismissed with prejudice.[5]

## II.   THE OPPOSITION FAILS TO SALVAGE PLAINTIFFS' STATE LAW CLAIMS.

### A.   Plaintiffs Cannot Rebut the Fact that Their Claims Are Time-Barred.

Plaintiffs do not dispute that the prescriptive period for their Louisiana Unfair Trade Practices and Consumer Protection Act ("LUTPA") and negligence claims is one year.  *See* La. R.S. 51:1409E; La. Civ. Code Ann. art. 3492; (*see also* Mot. at 17-18).  Although the latest point at which Plaintiffs allegedly purchased bonds from Stifel was 2016—three years before this action was filed—Plaintiffs argue that their claims are not untimely because the prescriptive period has

---

[5]   Plaintiffs assert that the "purpose of citing [the additional] chat transcripts is to make clear the complete disingenuousness of Stifel's defenses, and their almost blatant attempt to mislead this Court about their activities."  (Opp. at 6.)  Setting aside the fact that Plaintiffs' true purpose was to attempt to amend the SAC in defiance of the Court's Order, this assertion suggests a fundamental misunderstanding of how motions to dismiss operate.  Stifel has pointed out Plaintiffs' failure to allege adequately Stifel's involvement in the antitrust conspiracy; Stifel has not advanced any "allegations," nor would the Court be permitted to consider such allegations had they been made.  *See Ratcliff* v. *Roundtree*, 2011 WL 2011375, at 1 n.2 (M.D. La. May 3, 2011).

been tolled under *American Pipe* or the doctrine of fraudulent concealment. (Opp. at 8-11.) Plaintiffs are incorrect on both counts.

*American Pipe Tolling.* Although Plaintiffs argue for "tolling based upon the *American Pipe* decision" (Opp. at 8), they utterly ignore that Stifel was not a party to the New York Action on which their tolling argument relies. Federal courts around the country, including in this circuit, have held that *American Pipe* tolling does not toll claims brought against defendants who were not a party to the original class action. *See Enron,* 465 F. Supp. 2d at 730 ("*American Pipe* tolling based on the [prior] class action cannot apply to claims against Defendants not named in [that action] . . . because these parties were not named as Defendants in [that action] and were thus not on notice of the claims against them by Plaintiffs here."); *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2014 WL 1091095, at *4 (N.D. Cal. Mar. 13, 2014) ("TDA was not a defendant in any of the previously filed cases. This alone is enough for the Court to hold *American Pipe* tolling inapplicable in this case."); *Footbridge Ltd. Tr. v. Countrywide Fin. Corp.,* 770 F. Supp. 2d 618, 624 n.1 (S.D.N.Y. 2011) ("*American Pipe* tolling does not extend to persons not named as defendants in the prior class action suit.").

Plaintiffs' further claim that tolling under *American Pipe* applies "whenever the state law claim is based upon the same facts as the federal law class action" is also incorrect. (Opp. at 9.) "[W]here state law provides the rules of decision, 'a federal court should apply not only state statutes of limitation but also any accompanying tolling rules.'" *In re Vioxx Prod. Liab. Litig.*, 478 F. Supp. 2d 897, 907 (E.D. La. 2007) (quoting *Vaught* v. *Showa Denko K.K.*, 107 F.3d 1137, 1146 (5th Cir. 1997)). Thus, a court must examine a "state's tolling law to determine whether or not the states recognize class action tolling, by adopting the *American Pipe* rationale or otherwise." *Id.* at 907-08. Although Louisiana has codified class action tolling for class actions

filed in Louisiana state court, *see* LSA–C.C.P. 596, the relevant statute does "not extend to suspend prescription on claims asserted in a putative class action filed in a federal court." *Quinn*, 118 So. 3d at 1012; *see id.* at 1022 ("conclud[ing] that the legislature has rejected 'cross-jurisdictional tolling' in class action proceedings"). The Fifth Circuit has therefore held "as a matter of law" that a class action petition filed in federal court did not suspend prescription under Louisiana law. *McGee* v. *State Farm Fire & Cas. Co.*, 515 F. App'x 291, 294 (5th Cir. 2013). Thus, even if the filing of the New York Action *could* toll claims against a non-party such as Stifel, it would not apply to Louisiana state law claims, and thus would not save Plaintiffs' claims here.

*Fraudulent Concealment*. Plaintiffs' assertion that fraudulent concealment serves as an alternative basis for tolling their state law claims against Stifel likewise fails. Plaintiffs cite allegations concerning "affirmative acts taken by Defendants to conceal their conduct" (*see* Opp. at 10-11), but ignore the fact that the SAC specifically alleges that Plaintiffs were "not aware of Defendants' misconduct and could not have discovered it through the exercise of due diligence *until June 2018*." (SAC ¶ 169 (p. 90) (emphasis added).) Even accepting that Plaintiffs could not have "discover[ed] the facts that form the basis of [their] claim" prior to June 2018 (Opp. at 10 (quoting *Texas* v. *Allan Constr. Co.*, 851 F.2d 1526, 1528 (5th Cir. 1988))), Plaintiffs have conceded that they could have discovered those facts more than a year before this action was filed.

### B. Even if Plaintiffs' State Law Claims Were Not Time Barred, Plaintiffs Fail to Establish That the Allegations of the SAC State a Claim.

Because Plaintiffs' state law claims are time barred, the Court need not reach the question of whether these claims were adequately pled. However, even if the Court reaches the substance of the negligence and LUTPA claims, these claims fail for the following reasons.

*Negligence*. The "threshold issue" for establishing negligence is "whether the defendant owed the plaintiff a duty." *Meany* v. *Meany*, 94-0251, p. 6 (La. 7/5/94), 639 So. 2d 229,

233. Although the SAC is devoid of any factual allegations establishing the basis of Stifel's alleged duty to Plaintiffs (*see* Mot. at 20-22), Plaintiffs assert in their Opposition that the duties Stifel allegedly owes to Plaintiffs are "supported by the fact that Stifel is a registered broker dealer with FINRA which clearly mandates that it conform to each of these duties." (Opp. at 11 (citing SAC ¶ 174 (p. 91)).) The SAC does not allege that FINRA is the basis of Stifel's alleged duties. In fact, there is no reference to FINRA in connection with Plaintiffs' negligence cause of action. (*See* SAC ¶¶ 170-84 (pp. 90-96).) Thus, Plaintiffs once again impermissibly seek to expand the allegations of the SAC through their brief. *See supra* at 5-6.

Plaintiffs' argument fails regardless. Plaintiffs "'cannot recover for negligence based on the alleged violation of a FINRA rule.'" *Mraz* v. *JPMorgan Chase Bank, N.A.*, 2018 WL 2075427, at *5 n.4 (E.D.N.Y. May 3, 2018) (citation omitted); *Fox* v. *Lifemark Sec. Corp.*, 84 F. Supp. 3d 239, 245 (W.D.N.Y. 2015) (holding that "FINRA does not provide a private right of action, thus even if defendants violated FINRA rules, plaintiff cannot recover for negligence"); *Snapp* v. *Lincoln Fin. Sec. Corp.*, 2018 WL 1144383, at *7 n.7 (W.D. Va. Mar. 2, 2018), *aff'd*, 767 F. App'x 452 (4th Cir. 2019) ("The [plaintiffs] do not cite any authority, and the court has not found any cases, concluding that . . . the FINRA rules establish duties such that their violation gives rise to a private right of action for negligence."); *see also In re VeriFone Sec. Litig.*, 11 F.3d 865, 870 (9th Cir. 1993) ("It is well established that violation of an exchange rule will not support a private claim."). Though Plaintiffs baldly assert that Stifel's position is "dubious" (Opp. at 11), they do not cite any case law to the contrary. Because Plaintiffs' negligence claim against relies at most entirely on the alleged violation of FINRA rules, it should be dismissed.

***LUTPA.*** The SAC alleges that Plaintiffs' LUTPA claim was brought under La. R.S. 51:1404 and *State* v. *Abbott Labs., Inc.*, 2015-1626, p. 6-7 (La. App. 1 Cir. 10/21/16), 208

So. 3d 384, 388-89. (*See* SAC ¶ 185 (p. 96).) This statute and decision state only that the State Attorney General's Office may pursue claims under LUTPA, and therefore fail to provide any basis for Plaintiffs' claim. (*See* Mot. at 23-24.) Realizing their error, Plaintiffs now assert that *Cheramie Services, Inc.* v. *Shell Deepwater Production, Inc.*, 2009-1633 (La. 4/23/10), 35 So.3d 1053 and LA R.S. 51:1402(8) are the bases for their LUTPA claim. (*See* Opp. at 13-14.) However, Plaintiffs cannot now amend the SAC through their Opposition to the Motion. *See supra* at 5-6.

Even setting this issue aside, Plaintiffs fail to explain how their LUTPA allegations meet the heightened pleading requirements of Rule 9(b). As discussed in the Motion to Dismiss, because Plaintiffs' LUTPA cause of action relies on allegations that Stifel and other Defendants made "false statement[s] regarding the use of their experience and skill in recommending investments" (SAC ¶ 187 (p. 96)), Plaintiffs are required to allege the "particulars of time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." (Mot. at 25 (quoting *Benchmark Elec. Inc.* v. *J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003) (citation omitted)).) Plaintiffs' Opposition does not even mention Rule 9(b), much less explain how their allegations satisfy this standard. (*See* Opp. at 14-16.)

## CONCLUSION

For the foregoing reasons, this Court should dismiss the SAC as to Stifel with prejudice.

*/s/ George. C. Freeman, III*
George C. Freeman, III (LA Bar No. 14272)
Robert J. Dressel (LA Bar No. 35757)
BARRASSO USDIN KUPPERMAN
  FREEMAN & SARVER, L.L.C.
909 Poydras Street, Suite 2350
New Orleans, Louisiana 70112
Telephone: (504) 589-9700
Facsimile: (504) 589-9701
gfreeman@barrassousdin.com
rdressel@barrassousdin.com

Robert A. Sacks (*admitted pro hac vice*)
SULLIVAN & CROMWELL L.L.P.
1888 Century Park East
Los Angeles, CA 90067-1725
Telephone: (310) 712-6600
Facsimile: (310) 712-8800
sacksr@sullcrom.com

***Attorneys for Stifel, Nicolaus & Co., Inc.***

## CERTIFICATE OF SERVICE

I certify that on June 19, 2020, I served the foregoing on all counsel of record by filing the pleading with the court's electronic court filing (ECF) system, which automatically notifies all counsel. In addition, I served the following parties, which have not yet enrolled counsel, through their registered agents for service of process via certified mail, as identified on the Secretary of State's website:

>Goldman Sachs & Co. LLC
>c/o The Corporation Trust Company
>Corporation Trust Center
>1209 Orange Street
>Wilmington, DE 19801

*/s/ George C. Freeman, III*