UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

CITY OF BATON ROUGE/EAST
BATON ROUGE PARISH,
CONSOLIDATED EMPLOYEES
RETIREMENT SYSTEM AND
POLICE GUARANTY FUND

VERSUS

BANK OF AMERICA, N.A., *et al.*

CIVIL ACTION

19-725-SDD-RLB

**RULING**

This matter is before the Court on the *Motion to Dismiss*[1] filed by Defendant, Stifel, Nicolaus & Co., Inc. ("Stifel"). Plaintiffs, the City of Baton Rouge/East Baton Rouge Parish, Consolidated Employees Retirement System and Police Guaranty Fund ("Plaintiffs") filed an *Opposition*[2] to this motion, to which Stifel filed a *Reply*.[3] For the following reasons, the Court finds that Stifel's *Motion* should be granted, and Plaintiffs' claims against Stifel dismissed with prejudice.

I.   **BACKGROUND**

The *Complaint* in this matter is essentially identical to the *Complaint* in another suit before this Court, *State of Louisiana v. Bank of America, N.A., et al*,[4] which itself is essentially identical to *In re GSE Bonds Antitrust Litigation*,[5] a 2019 class action complaint in the Southern District of New York – a case in which Stifel is not a defendant. But for the United States Court of Appeals for the Fifth Circuit's position on the subject, this Court

---

[1] Rec. Doc. No. 151. The correct version of the *Memorandum in Support* is found at Rec. Doc. No. 159-3.
[2] Rec. Doc. No. 184.
[3] Rec. Doc. No. 203.
[4] Case No. 19-cv-638 (M.D. La. Sept. 23, 2019).
[5] Case No. 19-cv-1704 (S.D.N.Y. Feb. 22, 2019).

66065

would be inclined to grant the instant *Motion* as unopposed in light of Plaintiffs' mismanagement of briefing deadlines. Stifel filed this *Motion to Dismiss* on May 4, 2020.[6] Thus, Plaintiffs' opposition deadline was May 26, 2020. Instead of filing a timely opposition, Plaintiffs waited until two days after the deadline elapsed, and on May 28 filed a *Motion for Extension of Time to File Response*, seeking an extension until June 2.[7] Plaintiffs ultimately filed their *Opposition* on June 5, three days after their requested extended deadline of June 2, 2020.[8]

If Plaintiffs interpreted the Court's failure to immediately grant the *Motion for Extension* as a blank check to file the *Opposition* whenever they saw fit, they were mistaken. Plaintiffs have engaged in similarly "flexible" compliance with deadlines on other *Motions* in this case.[9] Luckily for Plaintiffs, under Fifth Circuit precedent, the Court must view "the automatic grant of a dispositive motion, such as a dismissal with prejudice based solely on a litigant's failure to comply with a local rule, with considerable aversion."[10] "To dismiss a claim with prejudice based on a litigant's conduct, the Court must find 'egregious and continued refusal to abide by the court's deadlines.'"[11] Plaintiffs' noncompliance here is irksome and bordering on egregious, but the Court will not impose the harsh sanction of dismissal based on counsel's conduct. Thus, the fate of this *Motion* will be decided on the merits. Since Plaintiffs apparently saw no need to reinvent the

---

[6] Rec. Doc. No. 151.
[7] Rec. Doc. No. 172.
[8] Rec. Doc. No. 184.
[9] Plaintiffs likewise failed to meet the original deadline and their own self-imposed deadline to oppose Wells Fargo's *Motion to Dismiss* (Rec. Doc. No. 155). Even more puzzlingly, Plaintiffs filed their *Opposition* to Capital One's *Motion to Dismiss* on April 30, 2020, a month after their deadline, without seeking an extension from the Court, then waited five more days to file a *Motion* seeking a retroactive extension until April 30. (Rec. Doc. No. 139; Rec. Doc. No. 144).
[10] *Webb v. Morella*, 457 Fed. Appx. 448, 452 (5th Cir. 2012).
[11] *Spell v. Edwards*, No. CV 20-00282-BAJ-EWD, 2020 WL 6588594, at *3 (M.D. La. Nov. 10, 2020)(quoting *Webb* at 452).

wheel, neither shall the Court; portions of the factual background and analysis that follows was first set forth in this Court's *Ruling* on Stifel's *Motion to Dismiss* in the State of Louisiana suit.[12]

In the *Second Amended Complaint*, Plaintiffs allege that Defendants conspired to fix the prices of government-sponsored entity ("GSE") bonds after the bonds were designated free-to-trade ("FTT"), in violation of § 1 of the Sherman Act and the Louisiana Unfair Trade Practices and Consumer Protection Act ("LUTPA"). Per Plaintiffs, Defendants colluded in multi-bank chatrooms to fix the FTT price before declaring the bonds FTT and that the same traders continued to fix the price after the bonds were declared FTT.[13]

Throughout the *Second Amended Complaint*, Plaintiffs make collective allegations against "Defendants" without specification. One of the scant specific allegations against Stifel asserts that the following alleged chatroom transcript from June 4, 2013, between a Stifel trader and Mizuho trader[14] is direct evidence of a price fixing conspiracy in violation of the Sherman Act:

> Stifel Nicolaus Trader: 99.00 FTT?
>
> […][15]
>
> Mizuho Securities Trader: par less 1.00
>
> Stifel Nicolaus Trader: Cool

---

[12] Rec. Doc. No. 179 in Case No. 19-cv-638.
[13] For further information about the GSE bond market, see this Court's *Ruling* in Case No. 19-cv-638 at Rec. Doc. No. 179.
[14] Mizuho Securities, USA LLC is a Defendant in the State of Louisiana suit, but not herein. Plaintiffs erroneously list Mizuho among the Defendants in this suit in the *Second Amended Complaint*.
[15] In original.

[…][16]

Stifel Nicolaus Trader: u wanna run an upsize cost?

Mizuho Securities Trader: […][17] ran one and got back 99.87.[18]

was gonna wait til it got back to 99.85

Mizuho Securities Trader: You cool w/ that?

Stifel Nicolaus Trader: yes

Stifel Nicolaus Trader: i agree

Mizuho Securities Trader: we should be closer now[19]

In addition to their Sherman Act claim, Plaintiffs allege a violation of the Louisiana Unfair Trade Practices and Consumer Protection Act ("LUTPA"), asserting that each Defendant "engaged in deceptive business practices regarding the advertisement of their brokerage services, including making false statement [sic] regarding the use of their experience and skill in recommending investments."[20] Plaintiffs also bring a negligence claim, alleging that Stifel owed a duty to ensure that the investments they offered were suitable for Plaintiffs and a duty to exercise reasonable care in recommending investments to Plaintiffs.[21] Plaintiffs aver that they relied on Stifel's representations of its skill and experience when Plaintiffs "awarded them contracts to sell securities to the City of Baton Rouge."[22] Plaintiffs argue that Stifel breached its duties by selling Plaintiffs bonds whose prices had been artificially inflated.[23] Moreover, Plaintiffs contend that Stifel should

---

[16] In original.
[17] In original.
[18] In original.
[19] Rec. Doc. No. 134, p. 58-59.
[20] *Id.* at p. 96.
[21] *Id.* at p. 91.
[22] *Id.* at p. 94.
[23] *Id.* at p. 83.

66065

have known that the prices were artificially inflated and its failure to recognize that and avoid selling the bonds at inflated prices to Plaintiffs was a breach of Stifel's duty to exercise reasonable care.[24] Plaintiffs request treble damages, a permanent injunction restraining Defendants from engaging in anticompetitive conduct, costs, attorneys' fees, and expert fees.[25] Stifel moves to dismiss Plaintiffs' claims against it pursuant to Rule 12(b)(6).

## II.   LAW AND ANALYSIS

### A.  Rule 12(b)(6) Motion to Dismiss

When deciding a Rule 12(b)(6) motion to dismiss, "[t]he 'court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"[26] The Court may consider "the complaint, its proper attachments, 'documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'"[27] "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'"[28]

In *Twombly*, the United States Supreme Court set forth the basic criteria necessary for a complaint to survive a Rule 12(b)(6) motion to dismiss. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will

---

[24] *Id.* at p. 94.
[25] *Id.* at p. 98.
[26] *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin v. Eby Constr. Co. v. Dallas Area Rapid Transit,* 369 F.3d 464, 467 (5th Cir. 2004)).
[27] *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) (quoting *Dorsey v, Portfolio Equity, Inc.*, 540 F. 3d 333. 338 (5th Cir. 2008).
[28] *In re Katrina Canal Breaches Litigation*, 495 F.3d at 205 (quoting *Martin v. Eby Constr. Co. v. Dallas Area Rapid Transit,* 369 F.3d at 467).

66065

not do."²⁹ A complaint is also insufficient if it merely "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"³⁰ However, "[a] claim has facial plausibility when the plaintiff pleads the factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."³¹ In order to satisfy the plausibility standard, the plaintiff must show "more than a sheer possibility that the defendant has acted unlawfully."³² "Furthermore, while the court must accept well-pleaded facts as true, it will not 'strain to find inferences favorable to the plaintiff.'"³³ "[O]n a motion to dismiss, courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'"³⁴

### B. Standing: Sherman Act Claims

Plaintiffs must have standing to pursue an antitrust suit. Specifically, Plaintiffs must plead (1) injury-in-fact—meaning an injury proximately caused by the defendants' conduct; (2) antitrust injury; and (3) proper plaintiff status, "'which assures that other parties are not better situated to bring suit.'"³⁵ Antitrust injury is "'injury of the type the antitrust laws were intended to prevent and that flows from that which makes the defendants' acts unlawful. The injury should reflect the anticompetitive effect either of the violation or of anticompetitive acts made possible by the violation.'"³⁶ "Typically, parties

---

²⁹ *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and brackets omitted) (hereinafter *Twombly*).
³⁰ *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted) (hereinafter "*Iqbal*").
³¹ *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570).
³² *Id.*
³³ *Taha v. William Marsh Rice University*, 2012 WL 1576099 at *2 (quoting *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 361 (5th Cir. 2004).
³⁴ *Twombly*, 550 U.S. at 556 (quoting *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)).
³⁵ *Waggoner v. Denbury Onshore, L.L.C.*, 612 F. App'x 734, 736 (5th Cir. 2015)(quoting *Doctor's Hosp. of Jefferson, Inc. v. Se. Med. Alliance, Inc.*, 123 F.3d 301, 305 (5th Cir.1997)).
³⁶ *Id.* at 737 (quoting *Brunswick Corp. v. Pueblo Bowl–O–Mat, Inc.*, 429 U.S. 477, 489 (1977)).

with antitrust injury are either competitors, purchasers, or consumers in the relevant market."[37] The "proper plaintiff" inquiry examines "(1) whether the plaintiff's injuries or their causal link to the defendant are speculative, (2) whether other parties have been more directly harmed, and (3) whether allowing this plaintiff to sue would risk multiple lawsuits, duplicative recoveries, or complex damage apportionment."[38] "In determining antitrust standing, [the Court] assumes the existence of an antitrust violation."[39]

The second and third prongs of the antitrust standing inquiry are not seriously in dispute. Plaintiffs' alleged injury is that they overpaid for bonds they bought because of Stifel's alleged participation in a conspiracy to fix prices. This suffices to allege an antitrust injury. As to the proper plaintiff inquiry, Plaintiffs allege that they were consumers in the allegedly price-fixed market. Plaintiffs, as the purchasers of the allegedly price-fixed bonds, are the party most directly harmed. Finally, allowing Plaintiffs to sue over two-party bond transactions it entered into does not risk multiple lawsuits, duplicative recoveries, or complex damage apportionment.

However, the first prong, injury-in-fact, is in dispute. The injury-in-fact inquiry focuses on the "directness or indirectness of the asserted injury."[40] Plaintiffs must allege that the "antitrust violation . . . cause[d] injury to the antitrust plaintiff."[41] "In a case involving a conspiracy to fix prices, the plaintiff must prove that the conspiracy in fact affected the prices paid."[42] Courts have found no injury where the plaintiff failed to allege any specific

---

[37] *Id.*
[38] *Norris v. Hearst Tr.*, 500 F.3d 454, 465 (5th Cir. 2007).
[39] *Harry v. Total Gas & Power N. Am., Inc.*, 889 F.3d 104, 115 (2d Cir. 2018) (internal citations omitted).
[40] *Associated Gen. Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 540 (1983).
[41] *Nichols v. Mobile Bd. of Realtors, Inc.*, 675 F.2d 671, 675 (5th Cir. 1982); *Robinson v. Texas Auto. Dealers Ass'n*, 387 F.3d 416, 422 (5th Cir. 2004).
[42] *In re Corrugated Container Antitrust Litig.*, 756 F.2d 411, 416 (5th Cir. 1985).

transactions that they entered into that harmed them.[43] Stifel correctly notes that Plaintiffs do not allege that they purchased the bond at issue in the Stifel-Mizuho chat.[44] This is Plaintiffs' third *Complaint*, yet they still fail to allege that they purchased the bonds made the subject of the Stifel-Mizuho chat. Thus, the causation between Plaintiffs' injuries, buying price fixed bonds and/or selling bonds at a supposedly depressed price, and Stifel's alleged injury-causing act, is attenuated at best.

But Plaintiffs' market analysis allegations are arguably probative of the possibility of a conspiracy pervasive enough to affect some of Plaintiffs' transactions. Plaintiffs allege that they entered into billions of dollars in GSE bond transactions between 2009 and 2016 with Defendants.[45]  Plaintiffs also allege pricing data that shows artificially inflated bid-ask spreads, a higher price charged by Defendants to Plaintiffs and others similarly situated during the conspiracy period as compared to after, and price fixing on bonds set to go off-the-run.[46] These allegations arguably tend to support the existence of a market-wide conspiracy; however, the market analyses relied upon by Plaintiffs fail to distinguish among Defendants. While the pricing data surveyed may be suggestive of market-wide anticompetitive pricing, there are no allegations which plausibly indicate that *Stifel's* pricing was anticompetitive. Similarly, there are no allegations to indicate that Stifel's allegedly anticompetitive pricing injured Plaintiffs, because the blanket label of "Defendants" obscures the individuality of each Defendant. The lack of an allegation as

---

[43] See *In re SSA Bonds Antitrust Litig.*, No. 16 CIV. 3711 (ER), 2018 WL 4118979, at *7 (S.D.N.Y. Aug. 28, 2018); *Harry v. Total Gas & Power N. Am., Inc.*, 244 F. Supp. 3d 402, 416 (S.D.N.Y. 2017) ("The plaintiffs' failure to allege a single specific transaction that lost value as a result of the defendants' alleged misconduct precludes a plausible allegation of actual injury."), aff'd as modified on other grounds, 889 F.3d 104 (2d Cir. 2018).
[44] Rec. Doc. No. 159-3, p. 9.
[45] Rec. Doc. No. 134, p. 81-82.
[46] *Id*. at p. 82-84.

66065

to Stifel's market share exacerbates this problem.[47] Because Plaintiffs do not allege Stifel's market share, it is impossible to determine the effect, if any, that Stifel's alleged pricing behavior could have had on market prices.

Besides the chatroom conversation, Plaintiffs' allegations related to Stifel, specifically, are limited to standard allegations of Stifel's type of business and place of business;[48] a bare allegation that it bought and sold bonds to and from Plaintiffs between 2009 and 2016;[49] an allegation that Stifel is an approved bond dealer;[50] and an allegation that Plaintiffs purchased $167,810,551.98 in bonds from Stifel in 2011, at supracompetitive prices.[51] So, while Plaintiffs argue that the *Second Amended Complaint* contains allegations that Stifel participated in the broader conspiracy and the extent of that participation, the Court finds that these allegations do not cross the threshold from mere possibility into plausibility.

The allegations as to Stifel are limited to the chatroom conversation with Mizuho and do not implicate Stifel in the broader conspiracy. While Plaintiffs include two and half pages of other chat transcripts in its *Opposition*, the Court cannot consider these transcripts as "it is axiomatic that a complaint cannot be amended by briefs in opposition to a motion to dismiss."[52] Because a Rule 12(b)(6) motion tasks the Court with "assess[ing] the legal sufficiency of the complaint," the Court does not consider allegations that appear for the first time in plaintiffs' briefing.[53]

---

[47] *Id*. at p. 38 (setting forth the market share of other Defendants but not Stifel).
[48] *Id*. at p. 27.
[49] *Id*.
[50] *Id.* at 28.
[51] *Id*. at p. 84.
[52] *Davis v. Louisiana State Univ. & A&M Coll.*, 2019 WL 179580, at *5 (M.D. La. Jan. 11, 2019).
[53] *Servicios Azucareros de Venezuela, C.A. v. John Deere Thibodeaux, Inc.*, 702 F.3d 794, 806 (5th Cir. 2012).

So, while Plaintiffs allege that Stifel engaged in price fixing as to one bond, there is nothing to connect that bond or Stifel to a broader scheme. Because there are no allegations plausibly suggesting that Stifel was part of a market-wide conspiracy, the market-wide analyses of pricing data that suggest a conspiracy do not implicate Stifel. As such, Plaintiffs' well-pleaded allegations as to Stifel are limited to the assertion that it may have fixed one bond and that Plaintiffs entered into unspecified bond transactions with Stifel in the same year. Courts have held that allegations that the plaintiff bought a bond from a defendant in the same 24-hour period the alleged price fixing occurred were insufficient to infer plausible actual damages.[54] That reasoning applies with greater force here. Plaintiffs have failed to plausibly plead injury-in-fact, and as such, antitrust standing. Stifel's *Motion* is granted as to Plaintiffs' antitrust claims.

### C. Louisiana Unfair Trade Practices and Consumer Protection Act ("LUTPA") Claim

LUTPA prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce . . . ."[55] "Louisiana has left the determination of what is an 'unfair trade practice' largely to the courts to decide on a case-by-case basis."[56] "The courts have repeatedly held that, under this statute, the plaintiff must show the alleged conduct 'offends established public policy and ... is immoral, unethical, oppressive, unscrupulous, or substantially injurious.'"[57] The Louisiana Supreme Court has explained that "the range of prohibited practices under LUTPA is

---

[54] *In re SSA Bonds Antitrust Litig.*, No. 16 CIV. 3711 (ER), 2018 WL 4118979, at *7 (S.D.N.Y. Aug. 28, 2018)(collecting cases).
[55] La. R.S. § 51:1405(A).
[56] *Turner v. Purina Mills, Inc.*, 989 F.2d 1419, 1422 (5th Cir. 1993); *Cheramie Services, Inc. v. Shell Deepwater Production, Inc.*, 35 So.3d 1053, 1059 (La. 2010) ("It has been left to the courts to decide, on a case-by-case basis, what conduct falls within the statute's prohibition").
[57] *Cheramie*, 35 So.3d at 1059 (citations omitted).

extremely narrow."[58] Further, the United States Court of Appeals for the Fifth Circuit has held that "the statute does not provide an alternate remedy for simple breaches of contract. There is a great deal of daylight between a breach of contract claim and the egregious behavior the statute proscribes."[59]

Stifel contends that Plaintiffs' LUTPA claim should be dismissed because Plaintiffs lack the statutory authority to bring such a claim under the statute they cite in their *Complaint*, Louisiana Revised Statute 51:1404. That statute, Stifel argues, clearly empowers the "Louisiana Attorney General's Office" to bring LUTPA claims. Plaintiffs counter that, in fact, the 2010 Louisiana Supreme Court case *Cheramie Services, Inc. v. Shell Deepwater Production, Inc.*[60] "expanded the definition of what Plaintiffs had standing to bring a claim under LUTPA."[61] Stifel challenges Plaintiffs' reliance on *Cheramie*, arguing that *Cheramie* was not raised in the *Second Amended Complaint* and that its inclusion in the *Opposition* amounts to improperly amending that *Complaint* via briefs. As this Court stated recently in another case, "[i]t would be a misstatement of pleading standards and civil procedure to suggest that the *Complaint* must reference every source of law that may be marshalled in support of the Plaintiff's claim."[62] But the issue here is a more fundamental flaw in pleading. Perhaps Plaintiffs asserted their LUTPA claim pursuant to La. R.S. § 51:1404 in error, as one of the many examples of typographical errors and failures to adequately adopt their copycat *Complaints* from other

---

[58] *Id.* at 1060.
[59] *Turner*, 989 F.2d at 1422; *Innovative Sales, LLC v. Northwood Mfg., Inc.*, 07-30598, 2008 WL 3244114, at *6 (5th Cir. 2008) (slip copy)(quoting *Turner v. Purina Mills, Inc.*, 989 F.2d 1419, 1422 (5th Cir.1993)).
[60] 2009-1633 (La. 4/23/10), 35 So. 3d 1053, 1054.
[61] Rec. Doc. No. 184-1, p. 16.
[62] *Entergy Gulf States Louisiana, LLC v. Louisiana Generating, LLC,* No. CV 14-385-SDD-RLB, 2021 WL 711470, at *3 (M.D. La. Feb. 23, 2021).

cases. Although *Cheramie* does stand for the proposition that, "consistent with the definition and usage of the word 'person,' there is no such limitation on those who may assert a LUTPA cause of action,"[63] that holding is derived from an analysis of La. R.S. § 51:1409, "Private actions." Plaintiffs do not cite § 51:1409 in the *Second Amended Complaint*.

Even assuming *arguendo* that Plaintiffs have standing to pursue their LUTPA claim, that claim cannot succeed based on the scant allegations as to Stifel in the *Second Amended Complaint*. Courts must determine "on a case-by-case basis" what conduct constitutes an "unfair trade practice" and "have repeatedly held that, under this statute, the plaintiff must show the alleged conduct offends established public policy and ... is immoral, unethical, oppressive, unscrupulous, or substantially injurious."[64] In the *Second Amended Complaint*, Plaintiffs allege that "each of these defendants engaged in deceptive business practices regarding the advertisement of their brokerage services, including making false statement [sic] regarding the use of their experience and skill in recommending investments."[65] As Stifel points out, LUTPA claims predicated on fraudulent misrepresentation are subject to the heightened pleading requirements of Rule 9(b).[66] The Court agrees with Stifel that "Plaintiffs do not allege a single representation made specifically to any of them by Stifel, much less a representation directed to GSE bonds."[67] The absence of specific allegations is fatal to the LUTPA claim, as it was to the

---

[63] 2009-1633 (La. 4/23/10), 35 So. 3d 1053, 1057.
[64] *Hunters Run Gun Club, LLC v. Baker,* No. CV 17-176-SDD-EWD, 2019 WL 3240044, at *1 (M.D. La. July 18, 2019)(quoting *Cheramie* at 1059).
[65] Rec. Doc. No. 134, p. 96.
[66] "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9.
[67] Rec. Doc. No. 159-3, p. 31.

Sherman Act claim. Plaintiffs assert that "the only real question is whether the blatant chat room participation of [Stifel] and the subsequent brokering of those selfsame securities by [Stifel] is a violation of LUTPA."[68] On this, the Court disagrees. The Plaintiffs' copy-cat pleading failed to include sufficient factually specific allegations against Stifel to render their claims against it colorable. Plaintiffs' LUTPA claim against Stifel is dismissed with prejudice.

### D. Negligence Claim

Plaintiffs must allege five elements to state a claim for negligence:

> (1) the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) the defendant's conduct failed to conform to the appropriate standard (the breach element); (3) the defendant's substandard conduct was a cause in fact of the plaintiff's injuries (the cause-in-fact element); (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and (5) the actual damages (the damages element).[69] . . . A negative answer to any of the inquiries of the duty-risk analysis results in a determination of no liability.[70]

First, the Court must consider if Plaintiffs have adequately alleged that Stifel owed it a duty.[71] "In deciding whether to impose a duty in a particular case, Louisiana courts examine 'whether the plaintiff has any law (statutory, jurisprudential, or arising from general principles of fault) to support the claim that the defendant owed him a duty.'"[72] Plaintiffs assert that Stifel had the duty to "ensure that the investments that they offered or brokered were suitable for the Plaintiffs as a client," "avoid unreasonable behavior which puts a client at risk of financial harm," and "use reasonable care in recommending

---

[68] Rec. Doc. No. 184-1, p. 17.
[69] *Audler v. CBC Innovis Inc.*, 519 F.3d 239, 249 (5th Cir. 2008) (citing *Lemann v. Essen Lane Daiquiris*, 923 So.2d 627, 633 (La. 2006)).
[70] *Id.* (citing *Mathieu v. Imperial Toy Corp.*, 646 So.2d 318, 321 (La.1994)).
[71] *Id.* (citing *Meany v. Meany*, 639 So.2d 229, 233 (La.1994)).
[72] *Id.* (citing *Faucheaux v. Terrebonne Consol. Gov't*, 615 So.2d 289, 292 (La.1993)).

investments to the Plaintiffs," and "avoid recommending investments which it knew or should have known would constitute a fraud or scam."[73] Plaintiffs contend that because Stifel is regulated by FINRA, it must abide by FINRA regulations, and those regulations create Stifel's duties to Plaintiffs.[74]

Plaintiffs argue that FINRA requires its members to disclose material information about investments to investors, to only recommend "suitable" investments to customers, and to provide the customer with the most favorable price under prevailing market conditions.[75] However, it is not at all clear that FINRA regulations can support a duty to Plaintiffs. Plaintiffs provide no authority to support their claim that FINRA regulations give rise to a duty, and Stifel cites to persuasive authority that FINRA regulations do not give rise to a duty.[76] Stifel maintains that "as arm's length counterparties, Stifel owed no fiduciary or other duties to Plaintiffs."[77]

Even assuming FINRA regulations may give rise to a duty, Plaintiffs have failed to sufficiently allege a breach of that duty. Stifel contends that Plaintiffs "fail to plead any facts sufficient to show that any such duty was breached."[78] Plaintiffs' *Opposition* does not address the issue of breach beyond this conclusory and confusing passage:

> Stifel's arguments against the existence of a breach are founded on one incorrect principle: that due to the self-concealing nature of the breach, that it could not have discovered the conspiracy. Now that Plaintiffs have uncovered evidence, as stated in the Second Am. Complaint that demonstrates that Stifel itself was a party to the conspiracy, while

---

[73] Rec. Doc. No. 184-1, p. 14.
[74] *Id.* at 14-15.
[75] *Id*.
[76] Rec. Doc. No. 159-3, p. 28, n. 13, citing *Mraz v. JPMorgan Chase Bank, N.A.,* 2018 WL 2075427, at *5 n.4 (E.D.N.Y. May 3, 2018) (citation omitted); *Fox v. Lifemark Sec. Corp.,* 84 F. Supp. 3d 239, 245 (W.D.N.Y. 2015) (holding that "FINRA does not provide a private right of action, thus even if defendants violated FINRA rules, plaintiff cannot recover for negligence").
[77] *Id*. at p. 11.
[78] *Id*. at p. 28.

simultaneously brokering GSE bonds *as well as a member institution regulated by FINRA*, this argument fails resoundingly.[79]

In short, Plaintiffs argue that Stifel breached its duty by being a party to the conspiracy. Although Plaintiffs report that they have "uncovered evidence" of Stifel's membership in a conspiracy, this Court found exactly the opposite above where it concluded that the Sherman Act claim against Stifel cannot survive this motion to dismiss. An anemic and possibly nonexistent duty, combined with a conclusory allegation of breach that is unsupported by the allegations in the *Complaint*, does not a successful negligence claim make. As Plaintiffs failed to state a Sherman Act claim against Stifel, they cannot now maintain that Stifel is liable in negligence for participating in an antitrust conspiracy. Holding to the contrary would allow Plaintiffs to skirt the requirements of antitrust standing and assert an antitrust claim without following the doctrinal prerequisites. Stifel's *Motion* shall be granted as to the negligence claim against it. Because it finds that Plaintiffs have failed to state a claim, the Court does not reach Stifel's arguments regarding prescription of the LUTPA and negligence claims.

---

[79] Rec. Doc. No. 184-1, p. 15-16 (emphasis in original).

## III. CONCLUSION

For the reasons above, Stifel's *Motion*[80] is granted and the claims against it dismissed with prejudice.

**IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana on <u>March 30, 2021</u>.

*Shelly D. Dick*

**JUDGE SHELLY D. DICK
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**

---

[80] Rec. Doc. No. 151.

66065