UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

CITY OF BATON ROUGE/EAST
BATON ROUGE PARISH,
CONSOLIDATED EMPLOYEES
RETIREMENT SYSTEM AND
POLICE GUARANTY FUND

VERSUS

BANK OF AMERICA, N.A., *et al*.

CIVIL ACTION

19-725-SDD-RLB

**RULING**

This matter is before the Court on the *Motion to Dismiss*[1] filed by Defendant, Wells Fargo Securities, LLC, Wells Fargo & Company, and Wells Fargo Bank, N.A. (collectively, "Wells Fargo," or the "Wells Fargo Defendants"). Plaintiffs, the City of Baton Rouge/East Baton Rouge Parish, Consolidated Employees Retirement System and Police Guaranty Fund ("Plaintiffs") filed a *Response*[2] to this motion, to which the Wells Fargo Defendants filed a *Reply*.[3] For the following reasons, the Court finds that Wells Fargo's *Motion* shall be GRANTED, and Plaintiffs' claims against the Wells Fargo Defendants dismissed with prejudice.

**I.    BACKGROUND**

The procedural history surrounding this *Motion* is messy. Plaintiffs filed their *Second Amended Complaint* in this matter on April 20, 2020.[4] The Wells Fargo Defendants filed the instant *Motion to Dismiss* shortly thereafter, on May 4, 2020.

---

[1] Rec. Doc. No. 155.
[2] Rec. Doc. No. 182-2.
[3] Rec. Doc. No. 210.
[4] Rec. Doc. No. 134.

66143

Plaintiffs' opposition deadline of May 26, 2020 passed without any filing from Plaintiffs. Belatedly, on May 28, 2020, Plaintiffs sought an extension of time to file their response, proposing a new deadline of June 2, 2020. The Court did not immediately grant that request for an extension, which Plaintiffs apparently took to be a free pass to file their *Opposition* beyond even their own sought-after deadline. On June 3, 2020, Plaintiffs filed a seven-page *Response* that incorporated a twenty-seven-page brief almost entirely recycled from its *Response* to a previous Wells Fargo *Motion to Dismiss*. Because the total filing exceeded twenty-five pages, the clerk issued a *Notice of Non-Compliance*.[5] Plaintiffs then substituted their brief, removing the initial seven-page *Response* and leaving only the recycled memorandum.[6] This was perhaps for the best, as the first seven pages of their filing were laden with typographical errors and nonsensical passages that [sic] can hardly cure, such as:

- "Therefore, where the arguments are duplicative the plentiful refer to that previous response"[7];

- "To the extent that the motion attempts to argue weather in fact this activity yes unlawful based upon the nature of Wells Fargo's participation this is certainly a fact inquiry and not something that cannot be addressed through a motion to dismiss."[8]

Plaintiffs' poor briefing aside, the Court has thoroughly considered the merits of Wells Fargo's *Motion* and Plaintiffs' *Response* in light of applicable law and finds that, for the reasons stated below, the Motion shall be GRANTED.

---

[5] Rec. Doc. No. 181.
[6] Rec. Doc. No. 182-2.
[7] Rec. Doc. No. 180, p. 2.
[8] Rec. Doc. No. 180, p. 5.

66143

The *Complaint* in this matter is essentially identical to the *Complaint* in another suit before this Court, *State of Louisiana v. Bank of America, N.A., et al*,[9] which itself is essentially identical to *In re GSE Bonds Antitrust Litigation*,[10] a 2019 class action complaint in the Southern District of New York – a case in which Wells Fargo is not a defendant. In the *Second Amended Complaint* here, Plaintiffs allege that Defendants conspired to fix the prices of government-sponsored entity ("GSE") bonds after the bonds were designated free-to-trade ("FTT"), in violation of § 1 of the Sherman Act and the Louisiana Unfair Trade Practices and Consumer Protection Act ("LUTPA"). Per Plaintiffs, Defendants colluded in multi-bank chatrooms to fix the FTT price before declaring the bonds FTT and that the same traders continued to fix the price after the bonds were declared FTT.[11] In addition to their Sherman Act claim, Plaintiffs allege a violation of the Louisiana Unfair Trade Practices and Consumer Protection Act ("LUTPA"), asserting that each Defendant "engaged in deceptive business practices regarding the advertisement of their brokerage services, including making false statement [sic] regarding the use of their experience and skill in recommending investments."[12] Plaintiffs also bring a negligence claim.[13] The Wells Fargo Defendants move to dismiss Plaintiffs' claims against them pursuant to Rule 12(b)(6).

---

[9] Case No. 19-cv-638 (M.D. La. Sept. 23, 2019).
[10] Case No. 19-cv-1704 (S.D.N.Y. Feb. 22, 2019).
[11] For further information about the GSE bond market, see this Court's *Ruling* in Case No. 19-cv-638 at Rec. Doc. No. 179.
[12] Rec. Doc. No. 134, p. 96.
[13] Wells Fargo correctly points out that neither the LUTPA claim nor the negligence claim appear in the "Claim for Relief" section of Plaintiffs' *Second Amended Complaint* – the claims are only referenced elsewhere in the document. (Rec. Doc. No. 155-1, p. 15). The Court yet again expresses its frustration with the sloppiness of Plaintiffs' pleadings but will, at the motion to dismiss stage, consider the LUTPA claim and negligence claims as properly raised despite their absence from the Claim for Relief and the Prayer for Relief section.

## II.    LAW AND ANALYSIS

### A.  Rule 12(b)(6) Motion to Dismiss

When deciding a Rule 12(b)(6) motion to dismiss, "[t]he 'court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"[14] The Court may consider "the complaint, its proper attachments, 'documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'"[15] "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'"[16]

In *Twombly*, the United States Supreme Court set forth the basic criteria necessary for a complaint to survive a Rule 12(b)(6) motion to dismiss. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[17] A complaint is also insufficient if it merely "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[18] However, "[a] claim has facial plausibility when the plaintiff pleads the factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[19] In order to satisfy the plausibility standard, the plaintiff must show "more than a sheer possibility that the defendant has

---

[14] *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin v. Eby Constr. Co. v. Dallas Area Rapid Transit,* 369 F.3d 464, 467 (5th Cir. 2004)).
[15] *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) (quoting *Dorsey v, Portfolio Equity, Inc.*, 540 F. 3d 333. 338 (5th Cir. 2008).
[16] *In re Katrina Canal Breaches Litigation*, 495 F.3d at 205 (quoting *Martin v. Eby Constr. Co. v. Dallas Area Rapid Transit,* 369 F.3d at 467).
[17] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and brackets omitted) (hereinafter *Twombly*).
[18] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted) (hereinafter "*Iqbal*").
[19] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570).

acted unlawfully."[20] "Furthermore, while the court must accept well-pleaded facts as true, it will not 'strain to find inferences favorable to the plaintiff.'"[21] "[O]n a motion to dismiss, courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'"[22]

### B. Sherman Act Claims

Section 1 of the Sherman Act states: "Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal."[23] To establish a § 1 violation, a plaintiff must prove that: (1) the defendants engaged in a conspiracy; (2) that restrained trade; (3) in the relevant market.[24] Regarding the conspiracy element, the Supreme Court has observed that "the crucial question [in a § 1 claim] is whether the challenged anticompetitive conduct stems from independent decision or from an agreement."[25]

The plaintiff must present evidence that the defendants engaged in concerted action, defined as having "a conscious commitment to a common scheme designed to achieve an unlawful objective."[26] Concerted action may be shown by either direct or circumstantial evidence. Direct evidence requires an understanding between the alleged

---

[20] *Id.*
[21] *Taha v. William Marsh Rice University*, 2012 WL 1576099 at *2 (quoting *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 361 (5th Cir. 2004).
[22] *Twombly*, 550 U.S. at 556 (quoting *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)).
[23] 15 U.S.C. § 1.
[24] *Golden Bridge Tech., Inc. v. Motorola, Inc.*, 547 F.3d 266, 271 (5th Cir. 2008)(citing *Apani Sw., Inc. v. Coca–Cola Enter., Inc.*, 300 F.3d 620, 627 (5th Cir.2002)).
[25] *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 545 (2007).
[26] *Monsanto Co. v. Spray–Rite Serv. Corp.,* 465 U.S. 752, 764 (1984).

conspirators, while circumstantial evidence calls for additional inferences in order to support a conspiracy claim.[27]

The Wells Fargo Defendants contend that the *Second Amended Complaint* fails to state a Sherman Act claim against them. Wells Fargo points out that the *Second Amended Complaint* makes various allegations against "Defendants" without specifying any entity in particular. Plaintiffs group Wells Fargo into a category they call "Additional Defendants,"[28] and make one allegation as to those Defendants – that they "participat[ed] in the fixing of prices of bonds sold to the Plaintiff."[29] The Court agrees that this allegation is woefully inadequate to state a Sherman Act claim against Wells Fargo. In addition to being conclusory, the allegation lacks basic factual information that tends to show the plausibility of the claim, such as, Wells Fargo notes, "how, when, through whom, or for which GSE Bond products that participation allegedly occurred."[30]

Plaintiffs maintain that their *Second Amended Complaint* adequately states a claim against the Wells Fargo Defendants. In fact, in their substituted *Response*, Plaintiffs aver that the filing of the *Second Amended Complaint* only "became made necessary [sic]"[31] due to the "sheer dishonesty"[32] of Wells Fargo's filings in this matter on the topic of conspiracy. This alleged dishonesty has come to light, Plaintiffs explain, "because evidence has now been uncovered" that a Wells Fargo subsidiary, Wells Fargo Securities, LLC, "was a direct participant in GSE Chatrooms and colluded to fix prices."[33] The direct

---

[27] *See Tunica Web Advert. v. Tunica Casino Operators Ass'n, Inc.,* 496 F.3d 403, 409 (5th Cir. 2007).
[28] Rec. Doc. No. 134, p. 82.
[29] *Id.*
[30] Rec. Doc. No. 155-1, p. 4.
[31] Rec. Doc. No. 182-2, p. 7.
[32] *Id.*
[33] Rec. Doc. No. 180-1, p. 7.

66143

evidence to which Plaintiffs apparently allude is the following chatroom transcript found in the *Second Amended Complaint*:

> 10:19:38 JEFFERIES LLC Trader 1 says:
>
> Spread off my marks but fixed
>
> **10:20:37 Wells Fargo Trader 1 says:**
>
> **so how r we showing now, and r we growing?**
>
> 10:20:39 FTN Trader 1 says:
>
> i'm fine adjusting the concession w/the market move but we have a decent amount of bonds (in aggregate) so i don't see a pressing need to upsize
>
> 10:21:36 JEFFERIES LLC Trader 1 says:
>
> ok, less .50c?
>
> 05/05/2015 10:21:47 JEFFERIES LLC Trader 1 says:
>
> Or ftt 99.95?
>
> 05/05/2015 10:21:56 JEFFERIES LLC trader 1 says:
>
> Whatever works here.[34]

According to Plaintiffs, this interaction is "simple and plain direct evidence of conspiracy on the part of this Defendant."[35] Plaintiffs also impermissibly attempt to amend their pleadings via brief by offering several additional passages from the transcript that are not found in the *Second Amended Complaint*;[36] the Court will not consider those. The Court grants that the above-reproduced transcript does establish that a Wells Fargo entity

---

[34] Rec. Doc. No. 134, p. 58.
[35] Rec. Doc. No. 182-2, p. 13.
[36] *Id*.

66143

*participated* in a chatroom – the chatroom, of course, is completely legal.[37] The actual content of the statement by Wells Fargo Trader 1 is difficult to parse ("so how r we showing now, and r we growing?") and, in the eyes of the Court, is not direct evidence of any sort of agreement between the parties, nor of Wells Fargo participating in a conspiracy. When the Jefferies trader starts talking about specific prices, the excerpt reflects that no one responded.

On a *Motion to Dismiss*, the Court is bound to draw all reasonable inferences in favor of the plaintiff. But it is simply not a reasonable inference that, based on the above transcript, the Wells Fargo Defendants participated in a conspiracy. Plaintiffs repeatedly describe the transcript as "direct evidence" of conspiracy. The United States Court of Appeals for the Fifth Circuit has rejected as inadequate direct evidence that did not show "an explicit understanding between the [parties] to collude.[38] The chatroom transcript scarcely evidences an understanding regarding price whatsoever, let alone an explicit one. Even if the chatroom transcript did evidence a Sherman Act violation, it is not clear that Plaintiffs would have standing to pursue a claim. Because they have failed to allege that they purchased the bonds that were the subject of the chat, Plaintiffs have failed to allege any causation between their injuries and the Wells Fargo Defendants' alleged injury-causing act. Courts have held that allegations that the plaintiff bought a bond from

---

[37] Plaintiffs themselves allege that "traders involved in GSE Bond syndicates of the Defendants were allowed to participate in multi-bank chat rooms to discuss pricing even though such conduct was prohibited among traders of different products at the same bank." (Rec. Doc. No. 134, p. 7).
[38] *Golden Bridge Tech., Inc. v. Motorola, Inc.,* 547 F.3d 266, 272 (5th Cir. 2008).

a defendant in the same 24-hour period the alleged price fixing occurred were insufficient to infer plausible actual damages.[39] That reasoning applies with greater force here.

Neither can the market analysis offered in the Second Amended Complaint serve to state a claim against the Wells Fargo Defendants. Plaintiffs allege that they entered into billions of dollars in GSE bond transactions between 2009 and 2016 with "Defendants."[40] Plaintiffs also allege pricing data that shows artificially inflated bid-ask spreads, a higher price charged by Defendants to Plaintiffs and others similarly situated during the conspiracy period as compared to after, and price fixing on bonds set to go off-the-run.[41] These allegations arguably tend to support the existence of a market-wide conspiracy; however, the market analyses relied upon by the Plaintiffs completely fail to distinguish among Defendants. While the pricing data surveyed may be suggestive of market-wide anticompetitive pricing, there are no allegations which plausibly indicate that Wells Fargo's pricing was anticompetitive. Similarly, there are no allegations to indicate that Wells Fargo's allegedly anticompetitive pricing injured Plaintiffs because the blanket label of "Defendants" obscures the individuality of each Defendant. The lack of an allegation as to Wells Fargo's market share exacerbates this problem.[42] Because Plaintiffs do not allege Wells Fargo's market share, it is impossible to determine the effect, if any, that Wells Fargo's alleged pricing behavior could have had on market prices. The absence of Wells Fargo-specific information in the market analyses is not a mystery; as

---

[39] *In re SSA Bonds Antitrust Litig.*, No. 16 CIV. 3711 (ER), 2018 WL 4118979, at *7 (S.D.N.Y. Aug. 28, 2018).
[40] Rec. Doc. No. 134, p. 82.
[41] *Id*. at p. 82-84.
[42] *Id*. at p. 38 (setting forth the market share of other Defendants but not Wells Fargo).

Wells Fargo points out, the analysis was lifted directly from the *Complaint* in *In re GSE Bonds*, where Wells Fargo was not a defendant.[43]

Besides the chatroom conversation, the allegations related to the Wells Fargo Defendants, specifically, are as follows: Plaintiffs allege that they purchased $342,075,000.00 in bonds between 2009 and 2016 from a group that included, among other Defendants, Wells Fargo;[44] that in 2013 Wells Fargo sold "the Plaintiff" [sic] $160,312,785.77 in bonds;[45] that Wells Fargo acted as a broker in these transactions;[46] and that Wells Fargo "touts itself as a 'leader' in capital markets."[47] So, while Plaintiffs argue that the *Second Amended Complaint* contains allegations that the Wells Fargo Defendants participated in the broader conspiracy, the Court finds that these allegations do not cross the threshold from mere possibility into plausibility. The conclusory assertion that Wells Fargo sold bonds to Plaintiffs at an anticompetitive price is not enough. Nor does the much-touted chatroom transcript give rise to any kind of reasonable inference that the Wells Fargo Defendants joined a conspiracy. The Court does not reach the issue of how the relationship between the Wells Fargo entities may affect liability; Plaintiffs have not stated a viable claim against any of them, regardless of their corporate structure. Plaintiffs' sloppy pleading makes it difficult to distinguish among Defendants at all, let alone to distinguish among entities under one corporate umbrella.

---

[43] Rec. Doc. No. 155-1, p. 5.
[44] Rec. Doc. No. 134, p. 82.
[45] *Id*. at p. 84.
[46] *Id*. at p. 92.
[47] *Id*. at p. 93.

### C. Louisiana Unfair Trade Practices and Consumer Protection Act ("LUTPA") Claim

Plaintiff's LUTPA claim cannot survive the Wells Fargo Defendants' *Motion*. LUTPA prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce . . . ."[48] "Louisiana has left the determination of what is an 'unfair trade practice' largely to the courts to decide on a case-by-case basis."[49] "The courts have repeatedly held that, under this statute, the plaintiff must show the alleged conduct 'offends established public policy and ... is immoral, unethical, oppressive, unscrupulous, or substantially injurious.'"[50] The Louisiana Supreme Court has explained that "the range of prohibited practices under LUTPA is extremely narrow."[51] Further, the United States Court of Appeals for the Fifth Circuit has held that "the statute does not provide an alternate remedy for simple breaches of contract. There is a great deal of daylight between a breach of contract claim and the egregious behavior the statute proscribes."[52]

> LUTPA contains an exception for:
>
> Any federally insured financial institution, its subsidiaries, and affiliates or any licensee of the Office of Financial Institutions, its subsidiaries, and affiliates or actions or transactions subject to the jurisdiction of the Louisiana Public Service Commission or other public utility regulatory body, the commissioner of financial institutions, the insurance commissioner, the financial institutions and insurance regulators of other states, or federal banking regulators who possess authority to regulate unfair or deceptive trade practices.[53]

---

[48] La. R.S. § 51:1405(A).
[49] *Turner v. Purina Mills, Inc.*, 989 F.2d 1419, 1422 (5th Cir. 1993); *Cheramie Services, Inc. v. Shell Deepwater Production, Inc.*, 35 So.3d 1053, 1059 (La. 2010) ("It has been left to the courts to decide, on a case-by-case basis, what conduct falls within the statute's prohibition").
[50] *Cheramie*, 35 So.3d at 1059 (citations omitted).
[51] *Id.* at 1060.
[52] *Turner*, 989 F.2d at 1422; *Innovative Sales, LLC v. Northwood Mfg., Inc.*, 07-30598, 2008 WL 3244114, at *6 (5th Cir. 2008) (slip copy) (quoting *Turner v. Purina Mills, Inc.*, 989 F.2d 1419, 1422 (5th Cir.1993)).
[53] La. R.S. 51:1406(1).

The Wells Fargo Defendants argue that this exception applies because Wells Fargo Bank is, as stated in the *Second Amended Complaint*, a "national banking association,"[54] and, they allege, its deposits are federally insured. Moreover, they argue, Wells Fargo & Co. and Wells Fargo Securities are also covered by the exception because they are affiliates of Wells Fargo Bank. Plaintiffs argue that the exception does not apply because Wells Fargo Securities is regulated by the Financial Industry Regulatory Authority ("FINRA"),[55] relying on *Grant v. Houser*, a case from the Eastern District of Louisiana, for their argument that because Wells Fargo is regulated by FINRA, the exception does not apply.[56]

In *Grant*, the Eastern District considered the defendant's argument that because it was registered with FINRA, it was exempt from LUTPA.[57] The court concluded that FINRA is an independent regulator and that an agency licensed by FINRA did not qualify for an exemption under the terms of LUTPA. However, the court did not conclude that FINRA registration categorically *bars* the application of the exemption if an entity otherwise meets the criteria of the exemption, which is what Plaintiffs ask this Court to hold.[58] There is nothing in the exception to LUTPA provided by La. R.S. § 51:1406(1) that excludes FINRA-regulated entities from its scope. In contrast, § 51:1406(1) contains broad language excluding from LUTPA's application "[a]ny federally insured financial institution, its subsidiaries, and affiliates or any licensee of the Office of Financial Institutions, its

---

[54] Rec. Doc. No. 134, p. 22.
[55] Rec. Doc. No. 182-2, p. 20.
[56] *Grant v. Houser*, No. CIV.A. 10-0805, 2013 WL 2631433 (E.D. La. June 11, 2013).
[57] *Id.* at *4.
[58] Rec. Doc. No. 182-2, p. 21.

subsidiaries….” As the Fifth Circuit has stated, "[t]he Louisiana Legislature has decided that LUTPA should not apply to '[a]ny federally insured financial institution, its subsidiaries, and affiliates,' and has not set out any exception to this broad rule."[59] For the reasons stated above, LUTPA does not apply to the Wells Fargo Defendants, and the LUPTA claim against them shall be dismissed with prejudice.

### D. Negligence Claim

Plaintiffs must allege five elements to state a claim for negligence:

(1) the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) the defendant's conduct failed to conform to the appropriate standard (the breach element); (3) the defendant's substandard conduct was a cause in fact of the plaintiff's injuries (the cause-in-fact element); (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and (5) the actual damages (the damages element).[60] . . . A negative answer to any of the inquiries of the duty-risk analysis results in a determination of no liability.[61]

First, the Court must consider if Plaintiffs have adequately alleged that the Wells Fargo Defendants owed them a duty.[62] "In deciding whether to impose a duty in a particular case, Louisiana courts examine 'whether the plaintiff has any law (statutory, jurisprudential, or arising from general principles of fault) to support the claim that the defendant owed him a duty.'"[63] Plaintiffs assert that the Wells Fargo Defendants had the duty to "ensure that the investments that they offered or brokered were suitable for the Plaintiffs as a client," "avoid unreasonable behavior which puts a client at risk of financial

---

[59] *Truong v. Bank of Am., N.A.,* 717 F.3d 377, 387 (5th Cir. 2013).
[60] *Audler v. CBC Innovis Inc.*, 519 F.3d 239, 249 (5th Cir. 2008) (citing *Lemann v. Essen Lane Daiquiris*, 923 So.2d 627, 633 (La. 2006)).
[61] *Id.* (citing *Mathieu v. Imperial Toy Corp.*, 646 So.2d 318, 321 (La.1994)).
[62] *Id.* (citing *Meany v. Meany*, 639 So.2d 229, 233 (La.1994)).
[63] *Id.* (citing *Faucheaux v. Terrebonne Consol. Gov't*, 615 So.2d 289, 292 (La.1993)).

harm," and "use reasonable care in recommending investments to the Plaintiffs," and "avoid recommending investments which it knew or should have known would constitute a fraud or scam."[64] Plaintiffs contend that because Wells Fargo is regulated by FINRA, it must abide by FINRA regulations, and those regulations create Wells Fargo's duties to Plaintiffs.[65]

Plaintiffs argue that FINRA requires its members to disclose material information about investments to investors, to only recommend "suitable" investments to customers, and to provide the customer with the most favorable price under prevailing market conditions.[66] However, it is not at all clear that FINRA regulations can support a duty to Plaintiffs; in fact, precedent suggests the opposite. Plaintiffs provide no authority to support their claim that FINRA regulations give rise to a duty, and Wells Fargo cites to persuasive authority that FINRA regulations do not give rise to a duty.[67] Wells Fargo maintains that its sale of bonds to Plaintiffs was an arms'-length transaction and it did not owe Plaintiffs "a duty to investigate, uncover, and disclose other financial institutions' alleged price-fixing conspiracy."[68]

Even assuming FINRA regulations may give rise to a duty, Plaintiffs have failed to sufficiently allege a breach of that duty. Wells Fargo argues as much in its *Motion*, noting that Plaintiffs simultaneously allege that Wells Fargo should have been aware that other

---

[64] Rec. Doc. No. 182-2, p. 18 (citing *Second Amended Complaint* at p. 91-92).
[65] *Id.* at 19.
[66] *Id*.
[67] Rec. Doc. No. 155-1, p. 22, citing *Mraz v. JPMorgan Chase Bank, N.A.,* No. 17-cv-6380, 2018 WL 2075427 at *5 (E.D.N.Y. May 3, 2018) ("cannot recover for negligence based on the alleged violation of a FINRA rule"); *In re VeriFone Sec. Litig.,* 11 F.3d 865, 870 (9th Cir. 1993)("It is well established that violation of an exchange rule will not support a private claim"). *See also Smith v. Questar Capital Corp.,* No. 12-cv-2669, 2013 WL 3990319 at *12 (D. Minn. Aug. 2, 2013).
[68] Rec. Doc. No. 155-1, p. 21.

financial institutions were fixing prices and that the price-fixing conspiracy "could not have [been] discovered . . . through the exercise of due diligence until"[69] it was revealed by DOJ's investigation in 2018. Plaintiffs' *Opposition* does not address the issue of breach beyond this conclusory and confusing passage:

> Wells Fargo's arguments against the existence of a breach are founded on one incorrect principle: that due to the self-concealing nature of the breach, that it could not have discovered the conspiracy. Now that Plaintiffs have uncovered evidence, as stated in the Second Amended Complaint that demonstrates that Wells Fargo itself was a MEMBER of the conspiracy, *as well as a member institution regulated by FINRA*, this argument fails resoundingly.[70]

In short, Plaintiffs argue that Wells Fargo breached its duty by being a party to, or a member of, the conspiracy. Although Plaintiffs report that they have "uncovered evidence"[71] of Wells Fargo's membership in a conspiracy, this Court found exactly the opposite above where it concluded that the Sherman Act claim against the Wells Fargo Defendants cannot survive this motion to dismiss. An anemic and possibly nonexistent duty, combined with a conclusory allegation of breach that is unsupported by the allegations in the *Complaint*, does not a successful negligence claim make. As Plaintiffs failed to state a Sherman Act claim against Wells Fargo, they cannot now maintain that Wells Fargo is liable in negligence for participating in an antitrust conspiracy. Holding to the contrary would allow Plaintiffs to skirt the requirements of antitrust standing and assert an antitrust claim without following the doctrinal prerequisites. The Wells Fargo Defendants' *Motion* shall be granted as to the negligence claim against them. Because it

---

[69] Rec. Doc. No. 134, p. 90.
[70] Rec. Doc. No. 182-2, p. 20 (emphases in original).
[71] *Id*.

finds that Plaintiffs have failed to state a claim, the Court does not reach Wells Fargo's arguments regarding prescription of the LUTPA and negligence claims.

## III. CONCLUSION

For the reasons above, the Wells Fargo Defendants' *Motion*[72] is granted and the claims against Wells Fargo Securities, LLC, Wells Fargo & Company, and Wells Fargo Bank, N.A. hereby dismissed with prejudice.

**IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana on March 30, 2021.

*Shelly D. Dick*

**JUDGE SHELLY D. DICK**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

---

[72] Rec. Doc. No. 155.

66143