UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

CITY OF BATON ROUGE/EAST
BATON ROUGE PARISH,
CONSOLIDATED EMPLOYEES
RETIREMENT SYSTEM AND
POLICE GUARANTY FUND

VERSUS

BANK OF AMERICA, N.A., *et al.*

CIVIL ACTION

19-725-SDD-RLB

**RULING**

This matter is before the Court on the *Motion to Dismiss*[1] filed by Defendant, Raymond James & Associates, Inc. Throughout the *Second Amended Complaint*, Plaintiffs refer to this Defendant variously as "Raymond James," "Morgan Keegan," "Morgan Keegan/Raymond James," and "Morgan Keegan, dba Raymond James." For purposes of this *Ruling*, the Court will refer to the Defendant as "Morgan Keegan."[2] Plaintiffs, the City of Baton Rouge/East Baton Rouge Parish, Consolidated Employees Retirement System and Police Guaranty Fund ("Plaintiffs"), filed an *Opposition*[3] to this motion. For the following reasons, the Court finds that Morgan Keegan's *Motion* should be granted, and Plaintiffs' claims against it dismissed with prejudice.

---

[1] Rec. Doc. No. 189.
[2] Defendant avers that Raymond James Financial, Inc. acquired Morgan Keegan & Co. in April 2012 via a corporate merger, with Raymond James being the surviving entity. (Rec. Doc. No. 189, p. 1, n. 1).
[3] Rec. Doc. No. 204.

**I.    BACKGROUND**

The *Complaint* in this matter is essentially identical to the *Complaint* in another suit before this Court, *State of Louisiana v. Bank of America, N.A., et al*,[4] which itself is essentially identical to *In re GSE Bonds Antitrust Litigation*,[5] a 2019 class action complaint in the Southern District of New York – a case in which Morgan Keegan is not a defendant. Plaintiffs optimistically aver that the similarity is "not a weakness, it is a strength."[6] With respect to this Defendant, and the other Defendants herein who were not present in the *In re GSE Bonds* suit, the Court respectfully disagrees. Since Plaintiffs saw no need to reinvent the wheel, neither shall the Court; portions of the factual background and analysis that follows first appeared in this Court's *Rulings* on the other *Motions to Dismiss* in this case and the State of Louisiana case.

In their *Second Amended Complaint*, Plaintiffs allege that Defendants conspired to fix the prices of government-sponsored entity ("GSE") bonds after the bonds were designated free-to-trade ("FTT"), in violation of § 1 of the Sherman Act. Per Plaintiffs, Defendants colluded in multi-bank chatrooms to fix the FTT price before declaring the bonds FTT and that the same traders continued to fix the price after the bonds were declared FTT.[7] In addition to their Sherman Act claim, Plaintiffs allege a violation of the Louisiana Unfair Trade Practices and Consumer Protection Act ("LUTPA"), asserting that each Defendant "engaged in deceptive business practices regarding the advertisement of their brokerage services, including making false statement [sic] regarding the use of

---

[4] Case No. 19-cv-638 (M.D. La. Sept. 23, 2019).
[5] Case No. 19-cv-1704 (S.D.N.Y. Feb. 22, 2019).
[6] Rec. Doc. No. 204-1, p. 7.
[7] For further information about the GSE bond market, see this Court's Ruling in Case No. 19-cv-638 at Rec. Doc. No. 179.

their experience and skill in recommending investments."[8] Plaintiffs also bring a negligence claim. Morgan Keegan moves to dismiss Plaintiffs' claims against it pursuant to Rule 12(b)(6).

## II.   LAW AND ANALYSIS

### A.  Rule 12(b)(6) Motion to Dismiss

When deciding a Rule 12(b)(6) motion to dismiss, "[t]he 'court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"[9] The Court may consider "the complaint, its proper attachments, 'documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'"[10] "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'"[11]

In *Twombly*, the United States Supreme Court set forth the basic criteria necessary for a complaint to survive a Rule 12(b)(6) motion to dismiss. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[12] A complaint is also insufficient if it merely "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[13] However, "[a] claim has facial plausibility when the

---

[8] Rec. Doc. No. 134, p. 96.
[9] *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin v. Eby Constr. Co. v. Dallas Area Rapid Transit,* 369 F.3d 464, 467 (5th Cir. 2004)).
[10] *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) (quoting *Dorsey v, Portfolio Equity, Inc.*, 540 F. 3d 333. 338 (5th Cir. 2008).
[11] *In re Katrina Canal Breaches Litigation*, 495 F.3d at 205 (quoting *Martin v. Eby Constr. Co. v. Dallas Area Rapid Transit,* 369 F.3d at 467).
[12] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and brackets omitted) (hereinafter *Twombly*).
[13] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted) (hereinafter "*Iqbal*").

plaintiff pleads the factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[14] In order to satisfy the plausibility standard, the plaintiff must show "more than a sheer possibility that the defendant has acted unlawfully."[15] "Furthermore, while the court must accept well-pleaded facts as true, it will not 'strain to find inferences favorable to the plaintiff.'"[16] "[O]n a motion to dismiss, courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'"[17]

### B. Sherman Act Claims

Section 1 of the Sherman Act states: "Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal."[18] To establish a § 1 violation, a plaintiff must prove that: (1) the defendants engaged in a conspiracy; (2) that restrained trade; (3) in the relevant market.[19] Regarding the conspiracy element, the Supreme Court has observed that "the crucial question [in a § 1 claim] is whether the challenged anticompetitive conduct stems from independent decision or from an agreement."[20]

The plaintiff must present evidence that the defendants engaged in concerted action, defined as having "a conscious commitment to a common scheme designed to achieve an unlawful objective."[21] Concerted action may be shown by either direct or

---

[14] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570).
[15] *Id.*
[16] *Taha v. William Marsh Rice University*, 2012 WL 1576099 at *2 (quoting *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 361 (5th Cir. 2004).
[17] *Twombly*, 550 U.S. at 556 (quoting *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)).
[18] 15 U.S.C. § 1.
[19] *Golden Bridge Tech., Inc. v. Motorola, Inc.*, 547 F.3d 266, 271 (5th Cir. 2008)(citing *Apani Sw., Inc. v. Coca–Cola Enter., Inc.*, 300 F.3d 620, 627 (5th Cir.2002)).
[20] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007).
[21] *Monsanto Co. v. Spray–Rite Serv. Corp.*, 465 U.S. 752, 764 (1984).

circumstantial evidence. Direct evidence requires an understanding between the alleged conspirators, while circumstantial evidence calls for additional inferences in order to support a conspiracy claim.[22]

Morgan Keegan contends that the *Second Amended Complaint* fails to state a Sherman Act claim against it, and the Court agrees. As an initial matter, Morgan Keegan disclaims any liability connected to a price-fixing scheme for GSE bonds since, it explains, it sold Plaintiffs *GSE discount notes*, not fixed rate GSE bonds. The distinction is material because, Morgan Keegan explains, the discount notes are "not offered or sold in the manner alleged in the *Complaint* (they are purchased directly from the GSE, and not underwritten by a syndicate of dealers), [and] their price is set by the issuing GSE and not by Morgan Keegan or any other broker/dealer."[23] In Morgan Keegan's view, Plaintiffs' failure to recognize the distinction is a "critical oversight" and the inevitable result of their copying from a separate lawsuit without bothering to review "the actual securities they purchased through Morgan Keegan."[24] Plaintiffs, who are in the best position to assess the accuracy of these assertions, do not refute them, or even address them.

Additionally, as Morgan Keegan points out, Plaintiffs continually make collective allegations against "Defendants" *in globo* without specification. This can hardly suffice to state a claim against any given Defendant.[25] The references to Morgan Keegan, specifically, read as follows:

- "Throughout 2009-2016, the City of Baton Rouge and CPERS Treasury and component units participated in thousands of GSE Bond transactions,

---

[22] *See Tunica Web Advert. v. Tunica Casino Operators Ass'n, Inc.,* 496 F.3d 403, 409 (5th Cir. 2007).
[23] Rec. Doc. No. 189-1, p. 3, n. 2.
[24] *Id*.
[25] *See, e.g., Paselk v. State*, No. 4:12-cv-754, 2013 WL 4791417 at *13 (E.D. Tex. Sept. 5, 2013)(A complaint that "lump[s] the Defendant[] in with various other parties, alleging no facts specific to any part in most cases, and never specific to the . . .Defendant[]," should be dismissed as to that defendant).

5

> including directly with some of the Defendants such as. . .Morgan Keegan. . ."[26]

- "Morgan Keegan is a subsidiary of Raymond James. Raymond James is a registered broker dealer with the SEC and FINRA and is licensed to do business in the State of Louisiana. It is an approved dealer for Freddie Mac, FRHLB and FNMA. Between 2009 and 2016, it made trades for billions of dollars of GSE bonds and sold GSE bonds to the [Plaintiffs]."[27]

- "Morgan Keegan . . . also participated in this conspiracy through the brokerage of bonds whose prices had been fixed by other defendants, and by also participating in the fixing of prices of bonds sold to the Plaintiff [sic]."[28]

- "[Plaintiffs] transacted billions of dollars' worth of GSE Bonds in the United States Between 2009 and 2016 directly with Defendants. . .Morgan Keegan. . .and Morgan Keegan [sic]."[29]

- "For example, the following transactions involve purchases of GSE Bonds which have been identified as among those whose FTT prices Defendants agreed to fix between 2009 and 2016: $414,000,000.00 purchases of FHLMC, FNMA, and FHLB fixed rate securities from Stifel Nicolaus, Capital one, and Morgan Keegan. . . §342,075,000.00 purchases. . .from Stifel, Wells Fargo, Capital One and Morgan Keegan."[30]

- "In 2011 the amounts of bonds sold to the Plaintiff [sic] which were sold at an inflated price as a result of the price fixing scheme as alleged herein, included the following: . . . Morgan Keegan sold $24,924,116.67. . ."[31]

- "Between July 1, 2010 and June 30, 2011, Defendant, Morgan Keegan, entered into contracts with the State of Louisiana to broker the purchase of fixed rate securities with a face value amount of $50,000,000.00. It also entered into contracts for the sale of said securities between July 1, 2012 and June 30, 2013 in the face value amount of $22,000,000.00."[32]

- "Defendant Morgan Keegan, dba Raymond James, also touts its experience in recommending investments to its clients. It states in its publicly available information that '…Our advisors have the freedom to recommend only what they think makes the most sense for each client in

---

[26] Rec. Doc. No. 134, p. 10.
[27] *Id*. at p. 30.
[28] *Id*. at p. 82.
[29] *Id*.
[30] *Id*.
[31] *Id*. at p. 84.
[32] *Id*. at p. 91.

6

> building a diversified investment portfolio designed for your specific objectives. And those recommendations are powered by the expertise of our industry-leading research…'"[33]

At best, these allegations establish that Morgan Keegan sold Plaintiff GSE Bonds in its capacity as a broker/dealer. That is scarcely disputed. Absent, however, is any specific and non-conclusory allegation tending to show that Morgan Keegan participated in a conspiracy to fix the prices of those bonds. For that proposition, Plaintiffs rely on the following alleged chatroom transcript from June 4, 2013, between a Morgan Keegan trader and a trader from FTN Financial,[34] calling it "direct evidence" of a conspiracy:

> 08:43:47 MORGAN KEEGAN & CO. trader 1, says:
> WELL LOOKS LIKE FNMA JUST GOT US TODAY. SORRY GUYS. I THINK WE NEED TO GO TO 99.90 ON OURS. WHAT DO YOU THINK?
> 08:44:42 MORGAN KEEGAN & CO. trader 1, says:
> ***[ WF] rang the bell
> 08:44:48 FTN FINANCIAL Trader 1 says:
> ouch'
> 08:44:50 FTN FINANCIAL trader 1 says:
> 99.90 ftt[35]

Approximately two and a half hours later, the same parties had this exchange:

> 11:11:59 MORGAN KEEGAN & CO. trader 1 , says:
> [FTN1] , CAN I GET 4780M FROM YOU ON THE 5YR STEP?
> 11:12:20 FTN FINANCIAL trader 1 says:
> 99.87 work? if so u can be dong
> 11:12:31 MORGAN KEEGAN & CO. trader 1, says:
> YES, THANK YOU VERY MUCH[36]

---

[33] *Id*. at p. 94.
[34] As Morgan Keegan correctly points out, Plaintiffs repeatedly include FTN Financial when listing Defendants in their *Second Amended Complaint*, but FTN Financial was not formally named as a Defendant nor was it ever served.
[35] Rec. Doc. No 134, p. 59-60.
[36] *Id*. at p. 60.

7

Plaintiffs describe these interactions as "smoking gun evidence of the conspiracy itself."[37] This certainty is belied by their statement that the issue before the Court this *Motion* is "whether this transcript can be *construed* as participation in the conspiracy."[38] This evidence is far from a "smoking gun." The legal standard for direct evidence of a conspiracy requires much more than an exchange that *might be construed* as an agreement; it requires plausible allegations of "a conscious commitment to a common scheme designed to achieve an unlawful objective."[39] Although prices are clearly a topic of discussion in the chat, the Court does not find evidence of an *agreement* based on the quoted excerpts from the *Second Amended Complaint*.

Plaintiffs weakly offer that the transcript "establishes that they [the traders] discussed prices" and suggest that the question of whether or not there was an actual *agreement* on price is "best left for resolution at a later stage in the proceedings."[40] Considering that the Supreme Court has held that "the crucial question [in a § 1 claim] is whether the challenged anticompetitive conduct stems from independent decision or from an agreement,"[41] the Court disagrees. Allegations of a mere "discussion" of prices, with the possibility of an agreement that can perhaps be shown later, does not suffice to state a Sherman Act claim, and falls woefully short of the plausibility standard required to survive a 12(b)(6) *Motion*.

Moreover, the chat transcript gives no indication that the bonds being discussed by the traders were the ones ultimately purchased by Plaintiffs; Plaintiffs never allege

---

[37] Rec. Doc. No. 204-1, p. 6.
[38] *Id*. (emphasis added).
[39] *Monsanto Co. v. Spray–Rite Serv. Corp.,* 465 U.S. 752, 764 (1984).
[40] Rec. Doc. No. 204-1, p. 6.
[41] *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 545 (2007).

such, and Morgan Keegan persuasively explains that it would be impossible for that to be the case, since the type of bonds Plaintiffs bought were not subject to syndication in this manner. Thus, this transcript cannot serve as proof of Plaintiffs' injury-in-fact, a necessary element of antitrust standing; Plaintiffs must allege that the "antitrust violation . . . cause[d] injury to the antitrust plaintiff."[42] Courts have found no injury where the plaintiff failed to allege any specific transactions that they entered into that harmed them.[43]

Moreover, it is a tall order for the Court to conclude, based on a few lines of inconclusive chat, that Morgan Keegan was part of a seven-year conspiracy spanning dozens of financial institutions and billions of dollars in bonds. Courts have held as much; in *In re Optical Disk Drive Antitrust Litig*., the District Court for the Northern District of California granted a motion to dismiss a Sherman Act claim where allegations of a conspiracy "involved only a small subset of defendants" and three alleged occasions of anticompetitive conduct.  That evidence, the court concluded, was "a far cry from establishing plausibility for a broad six year continuing agreement among all defendants to fix the prices of all [products] sold through innumerable other channels."[44] The same reasoning applies with greater force here, where only one specific instance of allegedly anticompetitive conduct has been identified and, as stated *supra*, Plaintiffs fail to allege that the subject chat even concerned a bond that they actually purchased from Morgan Keegan. Morgan Keegan sums up the deficiency well, stating:

---

[42] *Nichols v. Mobile Bd. of Realtors, Inc*., 675 F.2d 671, 675 (5th Cir. 1982); *Robinson v. Texas Auto. Dealers Ass'n*, 387 F.3d 416, 422 (5th Cir. 2004).
[43] *See In re SSA Bonds Antitrust Litig*., No. 16 CIV. 3711 (ER), 2018 WL 4118979, at *6 (S.D.N.Y. Aug. 28, 2018); *Harry v. Total Gas & Power N. Am., Inc*., 244 F. Supp. 3d 402, 416 (S.D.N.Y. 2017) ("The plaintiffs' failure to allege a single specific transaction that lost value as a result of the defendants' alleged misconduct precludes a plausible allegation of actual injury."), aff'd as modified on other grounds, 889 F.3d 104 (2d Cir. 2018).
[44] *In re Optical Disk Drive Antitrust Litig.,* No. 3:10-MD-2143 RS, 2011 WL 3894376, at *9 (N.D. Cal. Aug. 3, 2011).

> [The chat transcript] evidences no agreement to fix or artificially inflate prices on GSE Bonds, only a mention by *FTN Financial* of an FTT price. Further, it contains no information concerning which GSE Bonds the parties to the conversation were allegedly discussing; no allegations concerning the price at which they were actually sold, assuming any were sold; and no allegation that Plaintiffs actually purchased any of the GSE Bonds discussed. Most importantly, however, there is no indication that the price discussed was higher or lower than the price otherwise would have been or that the Morgan Keegan trader was agreeing to sell certain bonds at that higher price for mutual benefit. Indeed, the initial part of the chat alludes to the alleged Morgan Keegan trader deciding to *lower* the price of the unidentified bond at issue.[45]

As for any circumstantial evidence of conspiracy, the market analysis allegations proffered in the *Second Amended Complaint* do not render plausible Morgan Keegan's participation in a conspiracy pervasive enough to affect some of Plaintiffs' transactions. Plaintiffs allege that they entered into billions of dollars in GSE bond transactions between 2009 and 2016 with Defendants.[46] Plaintiffs also allege pricing data that shows artificially inflated bid-ask spreads, a higher price charged by Defendants to Plaintiffs and others similarly situated during the conspiracy period as compared to after, and price fixing on bonds set to go off-the-run.[47] While these allegations may point to the existence of a market-wide conspiracy, as this Court has now repeatedly concluded, the market analyses relied upon by the Plaintiffs fail to distinguish among Defendants. While the pricing data surveyed may be suggestive of market-wide anticompetitive pricing, there are no allegations which plausibly indicate that *Morgan Keegan's* pricing was anticompetitive (besides, allegedly, the sole chatroom transcript). Similarly, there are no allegations to indicate that Morgan Keegan's allegedly anticompetitive pricing injured Plaintiffs because the blanket label of "Defendants" obscures the individuality of each

---

[45] Rec. Doc. No. 189-1, p. 10-11.
[46] Rec. Doc. No. 134, p. 82.
[47] *Id*. at p. 82-84.

10

Defendant. The lack of an allegation as to Morgan Keegan's market share exacerbates this problem.[48] Because Plaintiffs do not allege its market share, it is impossible to determine the effect, if any, that Morgan Keegan's alleged pricing behavior had on market prices.

Overall, Plaintiffs' well-pleaded allegations as to Morgan Keegan are limited to the assertion that it fixed one unspecified bond and that Plaintiffs entered into bond transactions with Morgan Keegan in the same year. Courts have held that allegations that the plaintiff bought a bond from a defendant in the same 24-hour period the alleged price fixing occurred were insufficient to infer plausible actual damages.[49] That reasoning applies with greater force here. Plaintiffs have failed to plausibly plead Morgan Keegan's participation in a conspiracy and their own antitrust standing. Therefore, Morgan Keegan's *Motion* is granted as to Plaintiffs' antitrust claims.

### C. Louisiana Unfair Trade Practices and Consumer Protection Act ("LUTPA") Claim

LUTPA prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce . . . ."[50] "Louisiana has left the determination of what is an 'unfair trade practice' largely to the courts to decide on a case-by-case basis."[51] "The courts have repeatedly held that, under this statute, the plaintiff must show the alleged conduct 'offends established public policy and ... is immoral, unethical, oppressive, unscrupulous, or substantially injurious.'"[52] The Louisiana

---

[48] *Id*. at p. 38 (setting forth the market share of other Defendants but not Morgan Keegan).
[49] *In re SSA Bonds Antitrust Litig*., No. 16 CIV. 3711 (ER), 2018 WL 4118979, at *7 (S.D.N.Y. Aug. 28, 2018).
[50] La. R.S. § 51:1405(A).
[51] *Turner v. Purina Mills, Inc*., 989 F.2d 1419, 1422 (5th Cir. 1993); *Cheramie Services, Inc. v. Shell Deepwater Production, Inc*., 35 So.3d 1053, 1059 (La. 2010) ("It has been left to the courts to decide, on a case-by-case basis, what conduct falls within the statute's prohibition").
[52] *Cheramie*, 35 So.3d at 1059 (citations omitted).

11

Supreme Court has explained that "the range of prohibited practices under LUTPA is extremely narrow."[53] Further, the United States Court of Appeals for the Fifth Circuit has held that "the statute does not provide an alternate remedy for simple breaches of contract. There is a great deal of daylight between a breach of contract claim and the egregious behavior the statute proscribes."[54]

The parties' LUTPA arguments play out in lockstep with the other *Motions to Dismiss* in this case and the related case. Morgan Keegan asserts that the LUTPA claim should be dismissed because LUTPA does not apply to the transactions at issue herein. Indeed, LUTPA contains an exception for:

> Any federally insured financial institution, its subsidiaries, and affiliates or any licensee of the Office of Financial Institutions, its subsidiaries, and affiliates or actions or transactions subject to the jurisdiction of the Louisiana Public Service Commission or other public utility regulatory body, the commissioner of financial institutions, the insurance commissioner, the financial institutions and insurance regulators of other states, or federal banking regulators who possess authority to regulate unfair or deceptive trade practices.[55]

Morgan Keegan argues that this exception applies because, as alleged in the *Second Amended Complaint*, it is "a registered broker dealer with the SEC and FINRA and is licensed to do business in the State of Louisiana."[56] Moreover, the GSE Bonds "fall squarely within the definition of 'security,' and therefore, the transactions that form the basis of the City's claims are subject to regulation by the Louisiana Commissioner of Financial Institutions."[57] In other words, by the plain language of LUTPA, Morgan Keegan

---

[53] *Id.* at 1060.
[54] *Turner*, 989 F.2d at 1422; *Innovative Sales, LLC v. Northwood Mfg., Inc.*, 07-30598, 2008 WL 3244114, at *6 (5th Cir. 2008) (slip copy)(quoting *Turner v. Purina Mills, Inc.*, 989 F.2d 1419, 1422 (5th Cir.1993)).
[55] La. R.S. 51:1406(1).
[56] Rec. Doc. No. 189-1, p. 21, quoting Rec. Doc. No. 134 at p. 30.
[57] *Id.*

and its alleged conduct related to these transactions are exempt and the statute does not apply.

Plaintiffs argue that the exception does not apply because Morgan Keegan is regulated by the Financial Industry Regulatory Authority ("FINRA").[58] This argument is supported by citation to *Grant v. Houser*.[59] Unfortunately for Plaintiffs, *Grant* does not hold what they say it does. In *Grant*, the court considered the defendant's argument that because it was registered with FINRA, it was exempt from LUTPA.[60] The court concluded that FINRA is an independent regulator and that an agency licensed by FINRA did not qualify for an exemption under the terms of LUTPA. However, the court did not conclude that FINRA registration categorically *bars* the application of the exemption if an entity otherwise meets the criteria of the exemption, which is what Plaintiff asks this Court to hold.[61]

There is nothing in the exception to LUTPA provided by La. R.S. § 51:1406(1) that excludes FINRA-regulated entities from its scope. In contrast, § 51:1406(1) contains broad language excluding from LUTPA's application "[a]ny federally insured financial institution, its subsidiaries, and affiliates or any licensee of the Office of Financial Institutions, its subsidiaries…." As the Fifth Circuit has stated, "[t]he Louisiana Legislature has decided that LUTPA should not apply to '[a]ny federally insured financial institution, its subsidiaries, and affiliates,' and has not set out any exception to this broad rule."[62] For

---

[58] Rec. Doc. No. 204-1, p. 17.
[59] *Grant v. Houser*, No. CIV.A. 10-0805, 2013 WL 2631433, at *4 (E.D. La. June 11, 2013).
[60] *Id.*
[61] *Id.*
[62] *Truong v. Bank of Am., N.A.,* 717 F.3d 377, 387 (5th Cir. 2013).

the reasons stated above, LUTPA does not apply to Morgan Keegan and the LUTPA claim against it shall be dismissed with prejudice.

### D. Negligence Claim

Plaintiffs must allege five elements to state a claim for negligence:

> (1) the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) the defendant's conduct failed to conform to the appropriate standard (the breach element); (3) the defendant's substandard conduct was a cause in fact of the plaintiff's injuries (the cause-in-fact element); (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and (5) the actual damages (the damages element).[63] . . . A negative answer to any of the inquiries of the duty-risk analysis results in a determination of no liability.[64]

First, the Court must consider if Plaintiffs have adequately alleged that Morgan Keegan owed them a duty.[65] "In deciding whether to impose a duty in a particular case, Louisiana courts examine 'whether the plaintiff has any law (statutory, jurisprudential, or arising from general principles of fault) to support the claim that the defendant owed him a duty.'"[66] Plaintiffs assert that Morgan Keegan had the duty to "ensure that the investments that they offered or brokered were suitable for the Plaintiffs as a client," "avoid unreasonable behavior which puts a client at risk of financial harm," and "use reasonable care in recommending investments to the Plaintiffs," and "avoid recommending investments which it knew or should have known would constitute a fraud or scam."[67] Plaintiffs contends that because Morgan Keegan is regulated by FINRA, it must abide by FINRA regulations, and those regulations create Morgan Keegan's duties to Plaintiffs.[68]

---

[63] *Audler v. CBC Innovis Inc.*, 519 F.3d 239, 249 (5th Cir. 2008) (citing *Lemann v. Essen Lane Daiquiris*, 923 So.2d 627, 633 (La. 2006)).
[64] *Id.* (citing *Mathieu v. Imperial Toy Corp.*, 646 So.2d 318, 321 (La.1994)).
[65] *Id.* (citing *Meany v. Meany*, 639 So.2d 229, 233 (La.1994)).
[66] *Id.* (citing *Faucheaux v. Terrebonne Consol. Gov't*, 615 So.2d 289, 292 (La.1993)).
[67] Rec. Doc. No. 204-1, p. 15 (citing *Second Amended Complaint,* p. 91-92).
[68] *Id.*

Plaintiffs argue that FINRA requires its members to disclose material information about investments to investors, to only recommend "suitable" investments to customers, and to provide the customer with the most favorable price under prevailing market conditions.[69] However, it is not at all clear that FINRA regulations can support a duty to Plaintiffs. Plaintiffs provide no authority to support their claim that FINRA regulations give rise to a duty, and Morgan Keegan cites to persuasive authority that FINRA regulations do not give rise to a duty.[70] Morgan Keegan maintains that its sales to Plaintiffs were "arm's length transaction[s], from which no general tort duty could arise."[71] And, while Plaintiffs allege that Morgan Keegan failed to steer them away from bonds that were price-fixed by other Defendants, "Louisiana law is clear that no duty to protect against or control the actions of a third party exists unless a special relationship exists to give rise to such a duty."[72] Plaintiffs have not pled facts to support a finding of such a duty.

Even assuming FINRA regulations could give rise to a duty, Plaintiffs have failed to sufficiently allege a breach of that duty. Morgan Keegan argues as much in its *Motion*, contending that the *Second Amended Complaint* "does not contain any allegations that Morgan Keegan breached that duty. . .The *Complaint* alleges nothing regarding Plaintiffs' interactions with Morgan Keegan other than general allegations that Morgan Keegan sold Plaintiffs GSE Bonds."[73] Plaintiffs' *Opposition* does not address the issue of breach beyond this conclusory and confusing passage:

---

[69] *Id*. at 16.
[70] Rec. Doc. No. 189-1, p. 19, n. 68 and 69, citing *Fox v. Lifemark Sec. Corp.,* 84 F. Supp. 3d 239,245 (W.D.N.Y. 2015)("Plaintiff cannot recover for negligence based on the alleged violation of [a FINRA rule because] FINRA does not provide a private right of action"); *In re VeriFone Sec. Litig.,* 11 F.3d 865, 870 (9th Cir. 1993)("It is well established that violation of an exchange rule will not support a private claim").
[71] Rec. Doc. No. 189-1, p. 19.
[72] *Lowery v. Wal-Mart Stores, Inc.,* 42,465 (La. App. 2 Cir. 9/19/07), 965 So. 2d 980, 983.
[73] Rec. Doc. No. 189-1, p. 20.

> Morgan Keegan's arguments against the existence of a breach are founded on one incorrect principle: that due to the self-concealing nature of the breach, that it could not have discovered the conspiracy. Now that Plaintiffs have uncovered evidence, as stated in the Second Am. Complaint that demonstrates that Morgan Keegan and Raymond James were themselves parties to the chat room conspiracy, while simultaneously brokering GSE bonds *as well as a member institution regulated by FINRA*, this argument fails resoundingly.[74]

In short, Plaintiffs argue that Morgan Keegan breached its duty by being a party to the conspiracy. Although Plaintiffs report that they have "uncovered evidence" of Morgan Keegan's membership in a conspiracy, this Court found exactly the opposite above where it concluded that the Sherman Act claim against it cannot survive this motion to dismiss. An anemic and possibly nonexistent duty, combined with a conclusory allegation of breach that is unsupported by the allegations in the *Complaint*, does not a successful negligence claim make. As Plaintiffs failed to state a Sherman Act claim against Morgan Keegan, they cannot now maintain that Morgan Keegan is liable in negligence for participating in an antitrust conspiracy. Holding to the contrary would allow Plaintiffs to skirt the requirements of antitrust standing and assert an antitrust claim without following the doctrinal prerequisites. Morgan Keegan's *Motion* shall be granted as to the negligence claim against it. Because it finds that Plaintiffs have failed to state a claim, the Court does not reach Morgan Keegan's arguments regarding prescription of the LUTPA and negligence claims.

---

[74] Rec. Doc. No. 204-1, p. 16-17.

## III. CONCLUSION

For the reasons stated above, Morgan Keegan/Raymond James' *Motion*[75] is hereby granted and the claims against Raymond James & Associates, Inc. dismissed with prejudice.

**IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana on <u>March 30, 2021</u>.

*Shelly D. Dick*

**JUDGE SHELLY D. DICK
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**

---

[75] Rec. Doc. No. 189.