# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

CITY OF BATON ROUGE/EAST
BATON ROUGE PARISH,
CONSOLIDATED EMPLOYEES
RETIREMENT SYSTEM AND
POLICE GUARANTY FUND

VERSUS

BANK OF AMERICA, N.A., *et al*.

CIVIL ACTION

19-725-SDD-RLB

## **RULING**

This matter is before the Court on the *Motion to Dismiss Plaintiffs' Second Amended Complaint Pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6)*[1] filed by Defendant, Barclays Bank PLC (hereinafter "BBPLC"). Plaintiffs, the City of Baton Rouge/East Baton Rouge Parish, Consolidated Employees Retirement System and Police Guaranty Fund ("Plaintiffs"), filed an *Opposition*[2] to this motion, to which BBPLC filed a *Reply*.[3] BBPLC also filed a separate *Reply in Further Support*[4] of its *Motion* on the subject of Plaintiffs' failure to meet briefing deadlines. For the following reasons, the Court finds that BBPLC's *Motion* should be granted, and Plaintiffs' claims against it dismissed with prejudice.

---

[1] Rec. Doc. No. 156.
[2] Rec. Doc. No. 179.
[3] Rec. Doc. No. 214.
[4] Rec. Doc. No. 170.

**I.     BACKGROUND**

The *Complaint* in this matter is essentially identical to the *Complaint* in another suit before this Court, *State of Louisiana v. Bank of America, N.A., et al*,[5] which itself is essentially identical to *In re GSE Bonds Antitrust Litigation*,[6] a 2019 class action complaint in the Southern District of New York. BBPLC notes that it was, initially, made defendant in the New York suit, but was later dropped, "And for good reason."[7] After reviewing the parties' briefs and the applicable law, the Court concludes that Plaintiffs' claims against BBPLC shall be dismissed for want of jurisdiction. Since Plaintiffs saw no need to reinvent the wheel in their *Complaints* or briefs, neither shall the Court; portions of the factual background and analysis that follows first appeared in this Court's *Ruling* on BBPLC's *Motion to Dismiss* in the State of Louisiana case.[8]

As an initial matter, BBPLC objects to Plaintiffs' habit of "ignoring court deadlines in this litigation,"[9] outlining three instances where Plaintiffs failed to meet briefing deadlines without a compelling excuse, or any excuse at all. BBPLC urges the Court to grant its *Motion* as unopposed in light of Plaintiffs' noncompliance. The Court shares BBPLC's frustration. Plaintiffs waited until their *Opposition* deadline on this motion had come and gone to file a *Motion for Extension*, then filed an *Opposition* that does not address the 12(b)(6) arguments raised by BBPLC whatsoever. Nevertheless, under Fifth Circuit precedent, the Court must view "the automatic grant of a dispositive motion, such as a dismissal with prejudice based solely on a litigant's failure to comply with a local rule,

---

[5] Case No. 19-cv-638 (M.D. La. Sept. 23, 2019).
[6] Case No. 19-cv-1704 (S.D.N.Y. Feb. 22, 2019).
[7] Rec. Doc. No. 156-1, p. 5.
[8] *See* Case No. 19-cv-638, Rec. Doc. No. 179.
[9] Rec. Doc. No. 170, p. 2.

with considerable aversion."[10] "To dismiss a claim with prejudice based on a litigant's conduct, the Court must find 'egregious and continued refusal to abide by the court's deadlines.'"[11] Plaintiffs' noncompliance here is irksome and bordering on egregious, but the Court will not impose the harsh sanction of dismissal based on counsel's conduct. Thus, this *Motion* will be decided on the merits.

In the *Second Amended Complaint*, Plaintiffs allege that BBPLC, both individually and through its subsidiary, Barclays Capital Investments ("BCI"), conspired to fix prices in the market for government sponsored entity ("GSE") bonds. This Court reviewed the salient details of the GSE bond market in a prior *Ruling*.[12] Before turning to the claims against BBPLC, the Court must consider BBPLC's jurisdictional objections.

In short, BBPLC argues that this Court lacks personal jurisdiction over it. Plaintiffs disagree and proffer several distinct bases for the Court's exercise of jurisdiction. First, they argue that BBPLC has sufficient minimum contacts to justify the exercise of specific personal jurisdiction.[13] Second, Plaintiffs aver that BCI has sufficient minimum contacts to justify the exercise of specific personal jurisdiction, and BCI is merely an alter ego of BBPLC, so BCI's contacts can be imputed to BBPLC.[14] Third, Plaintiffs appear to suggest that BBPLC has sufficient *national* contacts to justify the exercise of personal jurisdiction

---

[10] *Webb v. Morella*, 457 Fed. Appx. 448, 452 (5th Cir. 2012).
[11] *Spell v. Edwards*, No. CV 20-00282-BAJ-EWD, 2020 WL 6588594, at *3 (M.D. La. Nov. 10, 2020)(quoting *Webb* at 452).
[12] *See* Case No. 19-cv-638, Rec. Doc. No. 179.
[13] Rec. Doc. No. 179-1, p. 2.
[14] *Id*. at p. 4.

under Fed. R. Civ. P. 4(k)(2).[15] BBPLC notes that Plaintiffs rely on allegations against BCI but never properly served it.[16] The Court will address each argument in turn.

## II. LAW AND ANALYSIS

### A. Personal Jurisdiction Based on BBPLC's Contacts

A federal district court sitting in diversity may exercise personal jurisdiction over a foreign defendant if: (1) the long-arm statute of the forum state enables personal jurisdiction over the defendant, and (2) the exercise of personal jurisdiction is consistent with the Due Process Clause. The due process and long-arm statute inquiries merge because Louisiana's long-arm statute extends jurisdiction coextensively with the limits of the Due Process Clause.[17]

A court may exercise specific jurisdiction[18] in conformity with due process "in a suit arising out of or related to the defendant's contacts with the forum"[19] when the "'nonresident defendant has purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities.'"[20] The Fifth Circuit follows a three-step analysis for specific personal jurisdiction. First, a court must determine "whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed

---

[15] *Id*. at p. 3-4. Plaintiffs draw the Court's attention to the concept of specific nationwide jurisdiction under Fed. R. Civ. P. 4(k)(2), stating, "[t]he court should note that Federal Rule of Civil Procedure 4(k)(2) permits personal jurisdiction over foreign defendants for claims arising under federal law where the defendant has sufficient contacts with the nation as a whole, but insufficient contacts to satisfy the due process concerns of the long-arm statute of any particular state." (Rec. Doc. No. 179-1, p. 4). Seeing no facts or arguments offered in support of this argument, the Court will consider the concept of nationwide jurisdiction noted.
[16] Rec. Doc. No. 156-1, p. 17.
[17] *Petroleum Helicopters, Inc. v. Avco Corporation*, 834 F.2d 510, 512 (5th Cir.1987).
[18] Plaintiffs do not allege general jurisdiction.
[19] *Luv N' Care, Ltd., v. Insta–Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006) (internal citations omitted).
[20] *Choice Healthcare, Inc. v. Kaiser Found. Health Plan of Colo.*, 615 F.3d 364, 368 (5th Cir. 2010) (quoting *Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 243 (5th Cir.2008)).

itself of the privileges of conducting activities there."[21] The "'purposeful availment' must be such that the defendant 'should reasonably anticipate being haled into court' in the forum state."[22] Second, a court considers "whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts."[23] Third, "[e]ven if minimum contacts exist, the exercise of personal jurisdiction over a non-resident defendant will fail to satisfy due process requirements if the assertion of jurisdiction offends traditional notions of fair play and substantial justice."[24]

"When a nonresident defendant presents a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing the court's jurisdiction over the nonresident."[25] When a district court rules on a motion to dismiss without an evidentiary hearing, the plaintiff need only present a *prima facie* case of personal jurisdiction.[26] At this stage, uncontroverted allegations in the complaint must be taken as true, and conflicts between the parties' affidavits must be resolved in the plaintiff's favor.[27] To aid resolution of the jurisdictional issue, a court "may receive interrogatories, depositions or any combination of the recognized methods of discovery . . . . But even if the court receives discovery materials, unless there is a full and fair hearing, it should not act as a fact finder and must construe all disputed facts in the plaintiff's favor and consider them along with

---

[21] *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006).
[22] *Ruston Gas Turbines, Inc. v. Donaldson Co., Inc.*, 9 F.3d 415, 419 (5th Cir. 1993) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). *See also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 ("This 'purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts.") (citations omitted); *In re Chinese Manufactured Drywall Products Liability Litigation*, 742 F.3d 576, 588 (5th Cir. 2014).
[23] *Seiferth*, 472 F.3d at 271.
[24] *Ruston Gas Turbines*, 9 F.3d at 421 (internal citations omitted).
[25] *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985).
[26] *Trinity Indus., Inc. v. Myers & Assoc., Ltd.*, 41 F.3d 229, 230–31 (5th Cir. 1995).
[27] *D.J. Inv., Inc. v. Metzeler Motorcycle Tire Agent Gregg, Inc.*, 754 F.2d 542, 546 (5th Cir. 1985).

the undisputed facts."[28] "When deciding a motion to dismiss for lack of personal jurisdiction, the court is not limited to considering the facts pleaded in the complaint."[29]

Plaintiffs—who bear the burden of establishing jurisdiction—argue that the Court has specific jurisdiction over BBPLC based on BBPLC's own contacts with Louisiana.[30] In support, Plaintiffs allege that BBPLC maintains an office and registered agent in this state;[31] "does business in the State of Louisiana";[32] owns or partially owns companies that have done business in the state;[33] and has entered into unrelated securities and mortgage loan transactions in the state.[34] BBPLC attaches as an exhibit to its *Motion* the affidavit of Stephen Shapiro, BBPLC's Company Secretary, who attests that BBPLC has no operating branches in Louisiana and "did not underwrite, purchase or sell securities issued by U.S. government-sponsored entities in or to the State of Louisiana between 2009 and 2016."[35] Plaintiffs attempt to discount the probative value of Shapiro's affidavit, arguing that "all [it] does is create a factual dispute over personal jurisdiction which cannot be resolved on a motion to dismiss."[36] But Plaintiffs do not controvert Shapiro's affidavit with their own plausible factual allegations. A factual dispute does not arise simply because Plaintiffs say so.[37]

---

[28] *Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 241–42 (5th Cir. 2008) (holding that the district court erred in requiring a plaintiff to establish more than a *prima facie* case even after a limited pretrial evidentiary hearing) (internal citations and quotations omitted).
[29] *Id.*
[30] Rec. Doc. No. 179-1, p. 2.
[31] Rec. Doc. No. 134, p. 12.
[32] *Id.*
[33] *Id.*
[34] *Id.* at p. 13.
[35] Rec. Doc. No. 156-2, p. 2.
[36] Rec. Doc. No. 179-1, p. 2.
[37] *See, e.g.*, *Libersat v. Sundance Energy Inc.,* No. 19-00421, 2020 WL 548754 at *3 (W.D. La. Jan. 31, 2020), aff'd, 978 F.3d 315 (5th Cir. 2020). ("If the defendant controverts factual allegations in the complaint with affidavits or other evidence, the plaintiff cannot rest solely on the controverted allegations in the complaint but must counter the defendant's evidence with affidavits or other evidence").

Even accepting the dubious proposition that Plaintiffs have sufficiently alleged minimum contacts, Plaintiffs have not established that the Court has specific personal jurisdiction over BBPLC under this theory, because Plaintiffs have not alleged that their cause of action *arises out of* BBPLC's contacts with Louisiana. The closest thing to an allegation that BBPLC transacted with Louisiana in the GSE bond market is the statement that Barclays Bank PLC "has specifically sold securities to the State of Louisiana and engaged in the sale of FNMA[,] FHLMC[,] or FHLB[,] securities in the State of Louisiana."[38] Plaintiffs do not allege that the named securities were price fixed, that the securities are the ones at issue in this case, or even when the securities were purchased.[39] On the other hand, Shapiro's uncontroverted affidavit states unequivocally that BBPLC had no GSE bond transactions with the State of Louisiana during the relevant time period.[40] Because BBPLC has disputed the factual grounds for personal jurisdiction, the Court may consider the record before it, including "affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery."[41]

Shapiro's uncontroverted affidavit establishes that BBPLC had no GSE bond transactions with Plaintiffs during the relevant period. Plaintiffs offer nothing more than restatements of their vague allegations in the *Second Amended Complaint* to suggest

---

[38] Rec. Doc. No. 134, p. 13.
[39] Plaintiffs do allege that they transacted in the GSE bond market with "Barclays" and other entities between 2009 and 2016. It is unclear to which Barclays defendant the allegation refers. On page 54 of the *Second Amended Complaint*, Plaintiffs provide a chatroom transcript labeled as applicable to defendant "Barclays"; the Barclays participant in the chat is labeled "BCI Trader 1." Subsequently, Plaintiffs refer twice to "Barclays PLC." Id. at 79, 80. Therefore, it appears that "Barclays" refers to BCI. In any event, the uncontroverted Shapiro affidavit refutes any purported allegation that BBPLC transacted in the GSE bond market with Plaintiffs.
[40] Rec. Doc. No. 156-2, p. 2.
[41] *Quick Technologies, Inc. v. Sage Group PLC*, 313 F.3d 338, 344 (5th Cir. 2002).

otherwise. Plaintiffs have failed to establish that their cause of action for the alleged price fixing of GSE bonds arises out of BBPLC's forum contacts, so BBPLC's contacts cannot form the basis of the Court's exercise of jurisdiction.

### B. Personal Jurisdiction Based on BCI's Contacts

Plaintiffs argue that the Court can impute BCI's contacts to BBPLC for jurisdictional purposes. Generally, "the proper exercise of personal jurisdiction over a nonresident corporation may not be based solely upon the contacts with the forum state of another corporate entity with which the defendant may be affiliated."[42] "[T]he presumption of institutional independence of related corporate entities may be rebutted by 'clear evidence,' which requires a showing of 'something beyond' the mere existence of a corporate relationship between a resident and nonresident entity to warrant the exercise of jurisdiction over the nonresident."[43] Courts use the *Hargrave* factors to determine whether the plaintiff has overcome the presumption of corporate separateness:

> (1) the amount of stock owned by the parent of the subsidiary; (2) whether the entities have separate headquarters, directors, and officers; (3) whether corporate formalities are observed; (4) whether the entities maintain separate accounting systems; and (5) whether the parent exercises complete control over the subsidiary's general policies or daily activities.[44]

The Fifth Circuit has noted that "the maintenance of corporate formalities tips in favor of finding that the entities are not alter egos, even where other factors support an alter ego relationship."[45] "[I]t is well-settled that where. . . a wholly owned subsidiary is operated as a distinct corporation, its contacts with the forum cannot be imputed to the parent."[46]

---

[42] *Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 346 (5th Cir. 2004).
[43] *Id.* (quoting *Dickson Marine, Inc. v. Panalpina, Inc.*, 179 F.3d 331, 338 (5th Cir.1999)).
[44] *Dickson Marine Inc.,* 179 F.3d 331, 339 (5th Cir. 1999) (citing *Hargrave v. Fibreboard Corporation*, 710 F.2d 1154 (5th Cir.1983).
[45] *Diece-Lisa Indus., Inc. v. Disney Enterprises, Inc.*, 943 F.3d 239, 251 (5th Cir. 2019).
[46] *Southmark Corp. v. Life Inv'rs, Inc.*, 851 F.2d 763, 773 (5th Cir. 1988).

Plaintiffs allege in support of their alter ego theory of jurisdiction that BBPLC owns the entirety of BCI through two holding companies, can install BCI's officers, and controls BCI's board of directors.[47] Plaintiffs rely heavily on the terms of the U.S. Resolution Plan ("the Plan") that Barclays executed in order to comply with the Dodd Frank Act and urges the Court to consider it.[48] Plaintiffs contend that the Plan demonstrates BBPLC's complete control over its subsidiary BCI such that the imputation of BCI's contacts is appropriate.[49]

Per Plaintiffs, the Plan is smoking gun evidence of BBPLC's control over BCI. In the *Second Amended Complaint*, Plaintiffs allege (and argue) that BBPLC

> has certified to the United States Government pursuant to the Dodd Frank Act that it will cause its subsidiary, Barclay's Capital Inc, as well as any other domestic entity to transfer the vast majority of its assets or ownership interest to what is referred to as a US IHC. (a holding company identified by the Defendant to remain solvent in the event if a financial stress event similar to the 2008 crash). Therefore, in one revealing statement, Barclays Bank PLC demonstrated without a shred of doubt, that it has ultimate authority under this plan to control Barclay's Capital Inc to a degree that it can unilaterally command it to transfer the substantial portion of its assts [sic] or ownership to another of its holding companies.[50]

BBPLC waves off this argument as a fundamental misunderstanding of the nature of the U.S. Resolution Plan, which, it explains, it drafted in response to the government's post-2008 financial crisis requirement for "financial institutions to implement advance plans for the prompt and organized wind down of operations in the event of severe financial distress."[51] Notably, although Plaintiffs' paraphrase of the Plan makes it out to be evidence of a top-down control relationship, the actual text of the 2018 Plan uses the

---

[47] Rec. Doc. 134, p. 13.
[48] Rec. Doc. No. 179-1, p. 2, 4, 8.
[49] *Id*. at p. 4.
[50] Rec. Doc. No. 134, p. 14.
[51] Rec. Doc. No. 214, p. 4.

plural "Barclays'" when describing a potential-be wind down procedure,[52] and defines "Barclays" as "Barclays PLC together with its subsidiaries and/or Barclays Bank PLC together with its subsidiaries."[53] In other words, the Plan represents a commitment by all of the Barclays entities to agree to a wind down—not an admission by BBPLC that it can cause BCI to wind down. Plaintiffs' reliance on this statement is misplaced. Shapiro's affidavit sounds the death knell of Plaintiff's imputation of contacts argument. Shapiro attests that "[BBPLC] is a separate and distinct legal entity from (a) Barclays Capital Inc....[i]t keeps its own books and records, has its own officers and directors, and properly observes corporate forms and formalities according to the laws under which it is organized."[54]

Application of the *Hargrave* factors compels the conclusion that the Court cannot impute BCI's contacts to BBPLC. Plaintiff alleges that BBPLC indirectly owns all of BCI's stock, which weighs in favor of imputation. Shapiro's affidavit establishes that the corporations have different officers and directors.[55] And the existence of separate headquarters is apparent from Plaintiffs' allegation that BCI is headquartered in New York,[56] while Shapiro's affidavit establishes that BBPLC is headquartered in England.[57] To the extent Plaintiffs allege that corporate formalities are not observed, Shapiro's affidavit expressly refutes that contention.[58] To the extent Plaintiffs allege joint accounting systems, Shapiro attests that the corporations "keep [their] own books."[59] Finally,

---

[52] "Barclays U.S. Resolution Plan Public Section" (July 2018) http://federalreserve.gov/supervisionreg/resolution-plans/barclays-plc-1g-20180701.pdf, p. 16.
[53] *Id*. at p. 6, n. 1.
[54] Rec. Doc. 156-2, p. 1-2.
[55] Rec. Doc. No. 156-2, p. 2.
[56] Rec. Doc. No. 134, p. 10.
[57] Rec. Doc. No. 156-2, p. 1.
[58] *Id*. at 2.
[59] *Id*.

Plaintiffs' only non-conclusory allegation as to the "complete control over the subsidiary's general policies or daily activities" prong is the above statement from the 2018 Plan. The Court agrees with BBPLC's characterization of the statement, namely, that it is not an admission of complete control by BBPLC. Rather, the statement indicates an agreement between the Barclays family of companies and the federal government. Especially since the Fifth Circuit has placed a thumb on the scale in favor of not imputing contacts where corporate formalities are observed,[60] Plaintiffs have fallen far short of alleging "clear evidence" of "something beyond" the existence of a corporate relationship. As such, the Court will not impute BCI's contacts to BBPLC.

## III.    CONCLUSION

 For the foregoing reasons, BBPLC's *Motion*[61] is GRANTED as to its 12(b)(2) arguments, and the claims against it dismissed with prejudice. The 12(b)(6) component of that *Motion*[62] is DENIED as moot.

**IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana on March 30, 2021.

_____
**JUDGE SHELLY D. DICK
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**

---

[60] *Diece-Lisa Indus., Inc. v. Disney Enterprises, Inc.*, 943 F.3d 239, 251 (5th Cir. 2019); "[I]t is well-settled that where. . . a wholly owned subsidiary is operated as a distinct corporation, its contacts with the forum cannot be imputed to the parent." *Southmark Corp. v. Life Inv'rs, Inc.*, 851 F.2d 763, 773 (5th Cir. 1988).
[61] Rec. Doc. No. 156.
[62] *Id*.